550 So.2d 1327 (1989)
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, State of Louisiana
v.
STANDARD CONSTRUCTION COMPANY OF GEORGIA, Massman Construction Co./Johnson Construction Company of Alabama, a Joint Venture, T.L. James and Company, Inc./Boh Brothers Construction Co., Inc., a Joint Venture and Traylor Brothers, Inc.
No. CA 88 1100.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
Rehearing Denied November 17, 1989.
Ronald Bertrand, Rayne, for plaintiff-appellant, Dept. of Transp. and Development, State of La.
*1328 Charles McCowan, Baton Rouge, and Paul Lewis, Saddle River, N.J., for defendant-appellant, Standard Const. Co. of Georgia.
Robert Winn, Jerome Lipsich, New Orleans, for defendants-appellants, Massman Const. Co. and Al Johnson Const. Co.
Patrick Browne, New Orleans, for defendant-appellant, Traylor Bros., Inc.
W.P. Wray, Jr., Baton Rouge, for defendants-appellees, T.L. James and Co., Inc. and Boh Bros. Const. Co.
William J. Doran, Jr., Baton Rouge, for defendant-appellee, Atty. Gen. of the State of La.
Joseph Annakin, Evansville, Ind., for appellee.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This appeal arises from a judgment against the Department of Transportation, State of Louisiana (hereinafter referred to as "DOTD") and in favor of: Standard Construction Company of Georgia (hereinafter referred to as "Standard") for $266,617.69; Massman Construction Company and Al Johnson Construction Company of Alabama[1], A Joint Venture (hereinafter referred to as "Massman/Johnson") for $275,274.40; Traylor Brothers, Inc. (hereinafter referred to as "Traylor") for $319,840.66; and T.L. James and Company, Inc. and Boh Brothers Construction Company, A Joint Venture (hereinafter referred to as "James/Boh") for $4,266,860.83. These damages represented bidding expenses and attorney fees for all of the successful litigants plus lost profits for James/Boh, and were granted against DOTD by the trial court on finding violations of the Public Bid Law, La.R.S. 38:2211 et seq.
Appeals were filed by DOTD, Standard, Massman/Johnson, and Traylor. DOTD assigns as error the award of damages to the defendants. Standard, Massman/Johnson, and Traylor each assign as error the failure of the trial court to find each one of them, respectively, to be the lowest responsible bidder and entitled to lost profits, rather than James/Boh. Additionally, Traylor assigns as error the trial court findings, with respect to James/Boh, that a joint venture with requisite legal capacity was formed and that the joint venture had established a permanent facility according to the Louisiana Preference Law. Further, Traylor assigns as error, the failure of the trial court to find irregularities in the bids of the other three defendants.
The facts and procedural history of this litigation were summarized by the trial court as follows:
On April 30, 1986, The Department of Transportaion [sic] & Development, State of Louisiana (Department) received bids for a public works project designated as Project No. 424-07-09, Gibson to Raceland Highway (Chacahoula-La 311), Route La. 3052, Terrebonne Parish, Louisiana (the project[[2]], Seven bids were received.
The four lowest bidders were as follows:

Standard Construction Company
of Georgia (Standard) $73,738,980.85
Massman Construction Co./
Al Johnson Construction Co.
A Joint Venture
(Massman/Johnson) $75,720,501.10
T.L. James & Co., Inc./
Boh Bros. Construction Co.
Inc., A Joint Venture
(James/Boh) $75,980,502.89
Traylor Brothers, Inc.
(Traylor) $76,476,785.79

Each claimed the right to the contract for the project as the "lowest responsible bidder who had bid according to the contract, plans and specifications, as advertised." (hereinafter referred to as "low bidder") (LSA R.S. 38:2212(A)(1)(a)). *1329 Standard was the low numerical bidder. The bids of Massman/Johnson, James/Boh and Traylor (hereinafter sometimes referred collectively as the bidders), were within five (5%) percent of the amount of the Standard bid.
The application of a five (5%) percent preference pursuant to the provisions of LSA R.S. 38:2225(A), (the Preference Law hereafter)[[3]] was part of the controversy. The Department perceived the Preference Law and its application to be uncertain.
The Department sought judicial resolution by filing its "Petition for Declaratory Judgment" herein. The Petition cites the Department's uncertainty and the controversy as grounds for declaration of the rights, status and legal relations of the parties pertaining to the contract for the project.
Standard, Massman/Johnson, James/Boh and Traylor were cited as defendants. Each filed Answer. Each filed Reconventional Demand against the Department and each joined with the Department for declaration of the "low bidder" under LSA R.S. 38:2211, et seq. (the Public Bid Law hereafter) and in addition, sought the issuance of the writ of injunction. Standard and James/Boh sought the alternative Writ of Mandamus. Each sought remedies by Cross Claim.
During the course of expedited discovery and trial, the parties pursued the court's determination of the "low bidder". The common object was to contract for the project. The Department's unique position was one of neutrality as to which of the bidders was the "low bidder". Its' expressed sole interest was that the court make its declaration of which bidder had the right to the contract as quickly as possible so that the project could proceed under contract with such "low bidder".
Trial was held and the matter was, by the parties, submitted, and by the court, taken under advisement.
Thereafter, while the matter was thus pending, the Department unilaterally and without notice or action herein, caused a letter dated March 12, 1987 (about one year after the bids were received) to be delivered to the bidders wherein the Department declared its rejection of all bids.
Motions were filed by the defendants. Status conferences were held. The Department *1330 moved for dismissal of its action with prejudice. Dismissal was denied. The Department's application for Writs to the First Circuit Court of Appeal was denied. The Supreme Court of Louisiana ordered this court to permit dismissal with prejudice. The Supreme Court thereafter clarified that its order applied solely to the Petition. [508 So.2d 812.]
Standard, Massman/Johnson, James/Boh and Traylor amended and supplemented their respective Reconventional Demands setting forth the claims of each for damages for anticipated profits, costs and expenses incurred.
The Department moved the court for new trial and, alternatively, to reopen the record to permit evidence on the Department's rejection of all bids on March 12, 1987. While the motion was pending, the parties entered stipulations by which the record was reopened for the limited purpose of permitting the evidence described therein to be made a part of the record. Evidence relating to reasons for rejection of all bids on March 12, 1987 was introduced and filed in the record. Evidence of the damages, costs and expenses of the Plaintiffs in Reconvention Standard, Massman/Johnson, James/Boh and Traylor was introduced and filed in the record. The court was provided with a copy of an agreement entered into between Standard, Massman/Johnson, James/Boh and Traylor and informed that Standard, Massman/Johnson, James/Boh and Traylor would, in lieu of their demands for injunction and mandamus, seek damages, costs and expenses. After trial pursuant to the stipulations, the matter was again, by the parties submitted, and by the court, taken under advisement.

RIGHT TO REJECT BIDS
In concluding that DOTD violated the Public Bid Law, the trial court found that by filing its petition for declaratory relief, DOTD accepted the offer of the low bidder and thus the award of the contract became a ministerial duty of DOTD upon designation of the low bidder by the trial court. Further, the trial court cited La.C.C. art. 1967 and the principles of detrimental reliance as additional reasons why DOTD was bound by its actions to award the contract.
We agree with the trial court that bids submitted in response to a public offering constitute an offer made for the state's acceptance; and that, where there is no just cause for rejection, the state must award the contract to the lowest responsible bidder. Haughton Elevator Division v. State, 367 So.2d 1161 (La.1979). Furthermore, the trial court is correct in maintaining that once the state accepts the offer of the lowest responsible bidder, it waives its right to reject all bids. Donahue v. Board of Levee Commissioners, 413 So.2d 488 (La.1982). However, we cannot agree that the mere filing by the state of a petition for declaratory relief concerning the applicability and construction of the Louisiana Preference Law and requesting thereby a declaration by the court as to which bidder would be the lowest responsible bidder thereunder, constitutes acceptance of the lowest bid.
The court cites "representations and assurances" made by counsel for DOTD as causing detrimental reliance by the parties, i.e., the remaining of the parties in the lawsuit and the expending of funds for legal and discovery costs in pursuit of the hope of being awarded the contract upon conclusion of the litigation. The "assurances" cited by the court[4] on which the parties relied were made during arguments on exceptions filed by Standard, during which Standard sought to establish that the declaratory judgment proceeding was inappropriate *1331 to this situation. Standard argued that the issue presented was non-justicable and that any judgment rendered would be purely advisory since DOTD would be under no obligation to award the contract on rendition of the judgment sought. Counsel for DOTD responded as follows:
Judge, I am authorized on behalf of my client, and I just confirmed that authorization a few minutes ago, to state to this Court that we are willing to be bound by the judgment rendered by this Court and to proceed in accordance with that judgment.
....
We could pursue whether or not such a stipulation could be drawn, I assume, your honor. I haven't discussed this with other counsel on this specific point. I am willing to say that my client would be willing to be bound.
These statements taken in the context in which they were made do not reflect an intent to waive the right to reject all bids as provided by La.R.S. 38:2214(A)(2).[5] At most this language can be seen as an offer to make such a stipulation; however, the record does not reflect that such a stipulation was made. In fact, counsel for Standard specifically declared to the court that Standard could not be required to enter into a contract because the time delays for awarding the contract as mandated by La. R.S. 38:2215 had expired.
The trial court rendered judgment dismissing the exceptions filed by Standard. In his reasons for judgment, the trial judge stated that a justiciable controversy did exist and that declaratory judgment relief was available to determine which bidder was the lowest responsible bidder. This decision was reached without regard to any statements, waivers or assurances made by any of the parties. Thereafter, Standard sought writs from this court which were denied.[6] Since the court ruled that DOTD had a right to the relief sought without regard to whether it could later be compelled to contract, any reliance by the parties on these statements to their detriment could not have been reasonable.
Thus, we find that DOTD retained its right to reject all bids under La.R.S. 38:2214(A)(2).

JUST CAUSE FOR REJECTION
La.R.S. 38:2214(A)(2) provides as follows:
(2) The public entity may reject any and all bids for just cause.
The trial court found that DOTD did not have just cause to reject the bids, finding rather, that funds were available for the first year of construction, that the State Bond Commission would have provided additional funds from the sale of bonds had DOTD informed them that it had "committed" to the project, and that DOTD wanted to use the funds on hand for other projects, waiting until the "sunset" of the Louisiana Preference Law to re-bid the project at a lower cost. The trial court further found *1332 DOTD to be in bad faith in deciding to forego the project in order to use the funds freed thereby for other projects and in order to re-bid the project after sunset of the Louisiana Preference Law. After a thorough review of the record, we find the dispositive factual determinations of the trial court to be manifestly erroneous.
The depositions of Roy Mitchell, the Chief Engineer of DOTD, and Joseph L. Wax, Deputy Undersecretary of DOTD, were admitted into evidence by stipulation following rejection of all bids. Both Mr. Mitchell and Mr. Wax testified that the sole consideration of DOTD officials in deciding to reject all bids was the declining financial condition of the state and the possibility that funds to complete the project once started might not be available.
Stephanie Alexander, Commissioner of Administration and member of the Bond Commission, testified by deposition regarding the procedural steps taken by a state agency to obtain funding by the sale of general obligation bonds through the Louisiana Bond Commission. Ms. Alexander testified that to obtain funding the state agency requests the project be included in the Governor's Capital Outlay Budget which is submitted to the Legislature for adoption. Prior to submission to the Legislature, meetings between the state agency and the Facility Planning and Control Department take place to negotiate agency requests. Ms. Alexander noted that the Legislature can add or delete items to the Capital Outlay Bill and the Legislature decides in what priorities projects are to be funded. There are five levels of priorities currently used. Priority I items are funded by bond sales, first, with Priority V items generally remaining unfunded. Following adoption of the Capital Outlay Bill, the Bond Commission sets the size of the bond sales and decides which projects within a priority level will be funded.
Neil Wagoner, Assistant Secretary of DOTD, Office of Highways, testified at trial regarding the manner in which bond funding is procured to finance highway projects. Mr. Wagoner stated that bonds are sold on a cash-flow basis; only the amount needed in a particular year is sold. As DOTD had $23,000,000.00 on hand in 1986 when the project was to be bid, $62,000,000.00 in general obligation bonds was approved and placed in Priority V status; and in conjunction with this, a line of credit in the amount of $62,000,000.00 was issued. Mr. Wagoner stated that the issuance of the line of credit is DOTD's authorization to proceed with the project. The record reveals that a line of credit expires at the end of each fiscal year; request must be made by the agency to re-issue it. Similarly, the agency must request on a yearly basis the inclusion of the bond authorization in the Legislature's Capital Outlay Bill. As it becomes necessary to sell bonds for the cash required to fund the project, the Legislature is requested to raise the priority of the allocation. Mr. Wax testified that $60,000,000.00 was thereafter retained in the Priority V status, but, no line of credit was re-issued. This information was verified by Annette Seng, Director/Secretary of the Louisiana Bond Commission.
Ms. Alexander testified that sometime in January or February of 1987, the Bond Commission advised that only Priority I bond authorizations would be funded; and that, only those projects which were ongoing or of an emergency nature were to be placed in Priority I.[7] Further, Mr. Wax *1333 testified that DOTD was instructed that it would only be allowed to sell $60,000,000.00 out of Priority I; this amount was for the department as a whole, not just U.S. 90 Relocation.[8] Mr. Wax testified that this $60,000,000.00 was designated by DOTD for ongoing projects.
At the time DOTD sent its letter rejecting all bids, March 12, 1987, the information as provided to that agency could have reasonably led it to believe that the financial difficulties of the state might prevent funding for the second and later years of construction of the subject project. Since the contract had not actually been awarded, Mr. Wax and other DOTD officials were correct in their conclusion that Project # XXX-XX-XX was not a "committed" project. As the Bond Commission had indicated that only "committed" projects would be funded in the coming year, sufficient cause for concern existed that Project # XXX-XX-XX would not be funded.
Emphasis by the Appellant-Bidders is placed on the testimony given by DOTD officials at an April 15, 1987 Senate Ad Hoc Committee meeting.[9] It is argued that the testimony given at the meeting proves that it was DOTD's intent on cancelling the bids to: 1) divert on-hand funds to other projects,[10] and 2) avoid the effects of the Preference Law by re-bidding the project after its sunset in July of 1987. The testimony, in fact, shows that Mr. Graves, Secretary of DOTD, suggested to the Committee that the remaining $15,900,000.00 in on-hand funds be used on three smaller projects on U.S. 90 Relocation; however, this suggestion was made as an alternative to merely holding the funds to await the outcome of the litigation on Project #XXX-XX-XX. The transcript further reveals that Mr. Graves informed the Committee concerning re-bidding Project # XXX-XX-XX, that it would be prudent to wait until after the July 1, 1987 expiration of the Preference Law. Although this testimony discloses alternative actions considered by DOTD following rejection of the bids submitted on Project #XXX-XX-XX; there is no proof whatsoever that these subsequent considerations precipitated the March 12, 1987 bid rejection letter. The undisputed testimony was to the contrary.
This court has previously recognized that insufficient budgetary allocations can result in just cause for rejection of all bids submitted. Daves Ins. Agency, Inc. v. State, 488 So.2d 705 (La.App. 1st Cir.), writ denied, 489 So.2d 236 (La.1986). Likewise, in the instant case we find that DOTD's anticipation of inability to fund the proposed project, resulted in just case for rejection of all bids.
Although the April 15, 1987 Senate Ad Hoc Committee meeting resulted in DOTD being assured by that committee that sufficient funds would be made available to complete construction on the entire U.S. 90 Relocation project, this subsequent information was unavailable to DOTD at the time the decision to reject was made on March 12, 1987.
We pretermit discussion of the remaining assignments of error, as their resolution is *1334 unnecessary to the disposition of this appeal.
For these reasons, the judgment of the trial court is reversed and the reconventional demands and cross-claims of the parties are dismissed. All costs of this appeal are to borne by Standard, Massman/Johnson, and Traylor.
REVERSED AND RENDERED.
NOTES
[1] This defendant is incorrectly named in the petition as: Massman Construction Co./Johnson Construction Company of Alabama.
[2] This project is referred to herein as: Project # XXX-XX-XX.
[3] The Louisiana Preference Law, La.R.S. 38:2225 currently reads as follows:

A. Repealed eff. July 1, 1987 by Acts 1984, No. 894, § 3.
B. If a nonresident contractor bidding on public work in the state of Louisiana is domiciled in a state that provides a percentage preference in favor of contractors domiciled in that state over Louisiana resident contractors for the same type of work, then every Louisiana resident contractor shall be granted the same preference over contractors domiciled in the other state favoring contractors domiciled therein whenever the nonresident contractor bids on public work in Louisiana.
C. Any local law, either by legislative act or otherwise, ordinance, or executive order enacted prior to the effective date of this Act, or enacted hereinafter in conflict with this Section, or granting any local contractor or subcontractor preference over other Louisiana resident contractors shall be contrary to the provision of this Section.
D. The provisions and requirements of this Section shall not be waived by any public entity.
The repealed subsection A, which was applicable to the instant contract, provided as follows:
"A. In the letting of contracts for public work by any public entity, except contracts financed in whole or in part by contributions or loans from any agency of the United States government, preference shall be given to Louisiana resident contractors over nonresident contractors. Any contract awarded by a public entity for the erection, construction, alteration, or repair of any public building or structure or for any public work or improvement for which competitive bidding is not required by law must be awarded to a Louisiana resident contractor, provided there is a Louisiana resident contractor available with the expertise required for the specific job. If competitive bidding is required by law, the contract must be awarded to the Louisiana resident contractor making the lowest responsible bid if the Louisiana resident contractor's bid is not more than five percent higher than the lowest responsible nonresident bid."
[4] The court additionally relies on certain comments made during a deposition taken from Robert Graves, Secretary of DOTD, prior to trial in the matter, wherein Mr. Graves was asked whether he thought all bids could be rejected, to which an objection was made. Mr. Graves went on to answer the question as follows:

"I don't believe I could, because I have since asked the Judge or the Courts to decide, and whatever their decision would be, I would honor it. And that's why I feel that it's in his hands and not mine."
It is important to note that this deposition was not entered into evidence at any point in the proceeding below, and was not even filed into the record. Seven pages of this deposition were attached to a brief filed by one of the parties which was inadvertently left amongst the exhibits (Evidence Folder marked: Envelope 1 of 3); this brief was not filed into the record. As such, this deposition testimony was improperly considered by the trial court in rendering his decision. Plain v. Refrigerated Transport Co., Inc., 393 So.2d 367 (La.App. 1st Cir.1980); Harris v. Alexandria Coca-Cola Bottling Co., 41 So.2d 93 (La.App. 2d Cir.1949).
[5] Additionally, We note that Section 103.03 of the Louisiana Standard Specifications for Roads and Bridges, 1982 edition, published by DOTD in accordance with La.R.S. 48:204-210, provides as follows:

The Department reserves the right to cancel the award of contract at any time before execution of said contract by all parties without liability against the Department.
All bidders were directed to this publication on page four of the Bid Proposal Forms.
[6] In denying writs, this court held: "On the showing made, we find no error. La.Code Civ.P. arts. 1871, 1872, 1878, and 1880." No further appeal was taken on the exceptions.
[7] The testimony of Ms. Alexander reveals that in late October of 1986, it was discussed and suggested at meetings of the Bond Commission that due to reduced state revenues and a reduced ability of the State to pay back obligation bonds, that a $120,000,000.00 cap be placed on the sale of obligation bonds for the 1986-1987 fiscal year. At the January 1, 1987 Bond Commission meeting, that cap was raised to $141,000,000.00, and, a moratorium was placed on the issuance of lines of credit. Only Priority I projects were to be funded with the exception of funds for Chennault Air Force Base, a Priority II project. Ms. Alexander further testified that in February of 1987 the State Treasurer received official written notice by the two bond rating agencies (Moody's Investor Service and Standard and Poors Corporation) that Louisiana's bond rating had been reduced. At the March 10, 1987 Bond Commission meeting, it was noted that lines of credit totaling $171,730,000.00 had been issued and it was stressed that no more lines of credit were to be issued. Ms. Alexander testified that that moratorium was still in effect at the time her deposition was taken, November 3, 1987.
[8] Mr. Wagoner explained that the project which is the subject of this litigation (referred to as Project # XXX-XX-XX) is a portion of a larger highway project, known as: U.S. 90 Relocation, Morgan City to Houma. The testimony and evidence showed that funds are obtained for the U.S. 90 Relocation project as a whole, and then allocated within DOTD as to which individual segment it is to be applied. Project # XXX-XX-XX is the segment of U.S. 90 Relocation in Terrebonne Parish from Gibson to Raceland.
[9] The transcript of this proceeding was entered into evidence on stipulation of the parties.
[10] The evidence in the record shows that of the approximate $20,000,000.00 in on-hand funds, some $4,000,000.00 was expended. This expenditure was shown to have been for other projects in U.S. 90 Relocation and as previously indicated, funds were appropriated to the project as a whole and allocated within DOTD to individual projects. It should also be noted that $15,000,000.00 was at all times on-hand and this was the amount needed for the first year of construction.