Dear Sen. Barham:
You have requested the opinion of this office regarding several issues related to the status of a state capital outlay project for the planning and construction of a "Community/Agricultural Center" for West Carroll Parish (Parish). This facility has now been designated by the Parish as the Thomas Jason Lingo Community Center (Center). You specifically ask:
 1. Does the Cooperative Endeavor Agreement signed between West Carroll Parish and the State of Louisiana obligate the Parish Police Jury to complete the Center in compliance with the terms of that Agreement?
 2. What is the status of the Parish's obligation in connection with the public bids received by the Parish on February 23, 2000 for the completion of the Center?
On January 26, 1999, President Charles Green of the West Carroll Parish Police Jury signed a "Cooperative Endeavor Agreement Between the State of Louisiana and The Parish of West Carroll" (Agreement). That Agreement was signed by Roger Magendie on behalf of the State of Louisiana on February 1, 1999 and became a legally binding agreement between the parties. The origin of this agreement was the application by West Carroll Parish for a line of credit for the Center project based upon the appropriation of state funds in the 1998 capital outlay budget. The Parish also committed itself to provide $690,000 in local matching funds to completely fund the Center project.
While many of the provisions of the Agreement impose requirements and limitations on the Parish in carrying out the project and administering the Center, the Parish clearly commits itself to the completion of the project, which is the essential purpose of the Agreement. These are some of the explicit undertakings of the Parish in the Agreement:
 1. "The Parish will solicit bids for the services, labor and materials needed to construct said Project in accordance with the public bid laws of the State, including, but not limited to R.S. 38:2211, et seq. applicable to political subdivisions of the State. The Parish will also keep a procurement file relative to the necessary acquisition of services, labor and materials needed to complete said Project which will be subject to review by the State at any time." [p. 5]
 2. "The Parish shall submit to the appropriate regulatory agencies all contract documents in accordance with all applicable laws, regulations and codes . . ." [p. 5]
 3. "It is the responsibility of the Parish to administer the Project according to all applicable laws, rules and regulations . . ." [p. 5]
 4. "The Parish agrees and obligates itself, its successors and assigns to defend, indemnify and save harmless and provide a defense for the State . . . against any and all claims, demands, suits, actions . . . judgments of sums of money . . . or damages to contractors, subcontractors, suppliers, laborers or other agents or contractors of the Parish or any of the above, growing out of, resulting from or by reason of any violation of the requirements of Acts 29 and 39 or any other State law . . . in connection with the engineering services, construction and construction engineering required or performed by the Parish . . . or any other claim of whatever kind or nature arising from, out of or in any way connected with the Project. . .". [p. 6]
 5. "The Parish recognizes and agrees that the receipt of the $550,000 in State monies is contingent upon the receipt and pledge of local matching funds by the Parish in the amount of $690,000. The Parish acknowledges and agrees that the requisite amount of matching funds has been received and pledged to the Project." [p. 7]
 6. "The Parish agrees to use its best efforts to expend all of the funds subject to this Agreement within two (2) years from the date of the issuance of the Bonds." [p. 7]
 7. "The Parish hereby covenants that it owns, will acquire title to, or obtain permanent easements for the property upon which the Project is to be located . . ." [p. 8]
 8. "This Agreement shall be effective from the date of execution hereof and shall remain in effect as long as the Bonds issued for the Project, or any refunding bonds therefor, remain outstanding." [p. 8]
These are sweeping undertakings by the Parish which are as binding upon the Police Jury now as they were when the Agreement was executed in January of 1999. A change in the elected membership of the Police Jury does not relieve the Jury of the legal obligations evidenced in the Agreement. Therefore, the West Carroll Parish Police Jury, as the governing authority for the Parish, continues to be obligated to comply with the terms of the Cooperative Endeavor Agreement.
Your second question regards the Parish's legal obligations flowing from the receipt of public bids for the completion of the Center, which bids were opened on February 23, 2000. This issue requires review of the provisions of the Louisiana Public Bid Law, La. R.S. 38:2211 and following, and jurisprudence which has interpreted that important statute.
R.S. 38:2212 requires that all public work projects exceeding a total cost of $100,000 "be advertised and let by contract to the lowest responsible bidder who had [has] bid according to the contract, plans, and specifications as advertised, and no such public work shall be done except as provided in this Part." Pursuant to this statutory requirement and the provisions of the Cooperative Endeavor Agreement, the Parish advertised for sealed bids to be received and opened on February 23, 2000.
At our request, the Secretary/Treasurer of the West Carroll Parish Police Jury has provided to this office copies of the following documents:
 1. The Advertisement for Bids and Information for Bidders
 2. The Bid Tabulation prepared by project engineer James H. Henry of bids received on February 23, 2000 for the Thomas Jason Lingo Community Center
 3. Minutes of West Carroll Parish Police Jury meetings held on March 14, 2000, March 23, 2000 and April 11, 2000
These documents reveal that at the March 14 meeting the bid tabulation was presented to the Jury reflecting the low base bid in the amount of $603,000 and low total bid, including three alternates, in the amount of $740,000, both by Ruffin Building Systems, Inc. Two other bidders participated and each of their total bids exceeded $1,000,000. The minutes reflect that after a lengthy discussion regarding the maintenance, upkeep and equipping of the proposed Center a motion was made to award the bid for completion of the Center to the low bidder, Ruffin Building Systems, Inc. for the base bid and alternate number 1 in the total amount of $643,000. The motion failed.
The minutes of a special meeting of the Police Jury on March 23, 2000 called to consider matters related to the Center indicate that a motion was made and adopted, "to rescind the motion passed at their March 14, 2000 regular meeting where the bid from Ruffin Building Systems, Inc. was not awarded for the completion of the Jason Lingo community Center." This is a curious parliamentary occurrence since there was no motion on this subject adopted at the March 14 meeting, only the motion to award the contract, which motion failed. Therefore, there was no adopted motion to "rescind". A motion was then made "to accept the low bid of Ruffin Building Systems, Inc. in the amount of $643,000 which includes the Base Bid and Alternate No. 1". A motion was made to table the pending motion and that non-debatable motion was adopted.
The next Jury discussion on the Center came at the April 11, 2000 regular meeting. The following entries relate to the Center:
 Shelton Ruffin appeared before the jury and gave a brief summary on the NEED Foundations involvement with the police jury on the Thomas Jason Lingo Community Center. Mr. Ruffin presented a resolution to the Police Jury and ask them to meet with their attorney and have their attorney meet with his attorney and maybe act on it at the jury's next meeting. He stated there were some things that may need changing but he was offering the jury a resolution where the building may be completed and functional and meet all the requirements that the state asked for.
 . . . . .
 Juror Butler made a motion, seconded by Juror Sistrunk, to add Mr. Shelton Ruffin's proposed contract that he had just give the jury to the agenda so they could look over it with their attorney while he was in executive session with them on other matters. THE MOTION PASSED UNANIMOUSLY.
 Juror Sistrunk made a motion, seconded by Juror Butler, to go into executive session on all three items for executive session on the agenda. THE MOTION PASSED UNANIMOUSLY.
After the executive session and reconvening in open session, the following entry appears.
 President Strong informed those present that while in executive session they discussed the Shelton Ruffin proposal and turned it over to their attorney to discuss with Mr. Ruffin's attorney as there are some things that might need to be changed by either party.
While outside the purview of your opinion request, it is important to point out that discussion of the bid proposal in executive session is a violation of the Open Meetings Law, La. R.S. 42:4.1
and following. R.S. 42:6.1 describes several matters which may be discussed in executive sessions of public entities and are therefore exempt from the broad open meeting requirements of the law. None of the statutorily provided exceptions would include the pending bid or contract for the construction of the Center.
The "resolution" which Mr. Ruffin presented to the Jury and which was discussed with counsel in executive session included provisions whereby the bidder agreed to extend the deadline to award the contract for a period of thirty days and the Jury would have obligated itself to award the contract to the low bidder based on the base bid and alternate number one for a total contract price of $643,000. This suggested resolution was not offered as a motion by any member of the Jury and consequently received no consideration.
Therefore, the Jury minutes of the three meetings at which the bids for the construction of the Center were discussed by the Jury reflect that no action has been taken by the Jury on the bids which were opened on February 23, 2000. The Police Jury Secretary-Treasurer advises us that no other discussions or actions have been taken by the Jury on the Center project, which is now more than sixty days past bid opening.
R.S. 38:2215A pertinently provides, "A political subdivision upon receipt of bids for the undertaking of any public works contract shall act within forty-five calendar days of such receipt to award said contract to the lowest responsible bidder or reject all bids. However, the public entity and the lowest responsible bidder, by mutually written consent, may agree to extend the deadline for award by one or more extensions of thirty calendar days."
This statutory mandate for prompt action to make an award was interpreted by the Louisiana Supreme Court in the case RosenbushClaims Service v. City of New Orleans, 653 So.2d 538 (La. 1995); rehearing denied, May 11, 1995. In relevant part, the court held:
 As Rosenbush and the Contractors correctly argue, the present LSA-R.S. 38:2214 and 38:2215 should be interpreted together to provide that a public entity has 30 days to do one of the following: (1) award a contract to the lowest responsible bidder; (2) reject all bids for just cause; or (3) extend the deadline by mutual consent with the lowest responsible bidder. In the present case, the City did none of these. Since the City failed to comply with its obligation to award the contract within the 30-day period, a mandamus action to compel the public entity to award the contract to the lowest qualified bidder was justified. At this point, the City could not avoid its ministerial duty by trying to change the basis of the contract from "administrative services" to "professional services" and readvertise for bids; the 30-day period in LSA-R.S. 38:2215 had already expired; it was simply too late. [Emphasis added.]
Since this decision was rendered, the 30 day period for contract award was legislatively extended by Act 1031 of 1997 to 45 days for political subdivisions such as the Jury. However, Rosenbush's
imperative for action by the public entity continues. Since the Police Jury failed to act on the bids, the lowest bidder now has a right to enforce the award of the contract by the Parish through an action for mandamus such as was granted in the Rosenbush case.
I trust that this answers your inquiry. Please let me know if we may be of any further assistance to you in this matter.
Sincerely,
 RICHARD P. IEYOUB
Attorney General
 By:____________________________________ GLENN R. DUCOTE
Assistant Attorney General Chief, Public Finance Contracts Section