264 So.2d 768 (1972)
TOYE BROS. YELLOW CAB COMPANY
v.
CITY OF NEW ORLEANS et al.
No. 5393.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1972.
Rehearing Denied August 7, 1972.
Writ Refused October 19, 1972.
*769 Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., Charles F. Seemann, Jr., Frederick B. Alexius, New Orleans, for plaintiff-appellant.
Blake G. Arata, City Atty., Patrick M. Schott, Asst. City Atty., for defendants-appellees.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Murphy Moss, Earl S. Eichin, Jr., New Orleans, for defendant-appellee.
Before CHASEZ, BOUTALL, and BAILES, JJ.
BAILES, Judge.
Toye Bros. Yellow Cab Company (hereinafter referred to simply as Toye) brought suit against the City of New Orleans, Mayor Moon Landrieu, The Council of the City of New Orleans and each individual councilman, the New Orleans Aviation Board and each individual member of the board, Mr. O. L. Sands, executive director, and Mr. Paul J. Stoulig, director *770 (of the Aviation Board), and New Orleans Transportation Service, Inc., a private business corporation (hereinafter referred to simply as NOTSI), all defendants, for an injunction and, in the alternative, for declaratory judgment based on Toye's claim that the award of a five year franchise for Airport Limousine/Bus Ground Transportation Service at the New Orleans International Airport to NOTSI was illegal.
After trial in the district court, judgment was rendered adverse to the contention of the plaintiff and it has appealed. For the reasons herein assigned, we affirm.
From the record, it appears that Toye has operated airport limousine/bus ground transportation service to the various airports of New Orleans from the beginning of the era of air travel to the present time. Its last granted franchise was for a period of ten years which expired by its terms on October 31, 1970. Since that time Toye has been serving the ground transportation needs of air travelers at the New Orleans International Airport without a franchise.
In January 1972, the City Bureau of Purchasing issued an invitation to all interested and qualified persons to bid for the airport ground transportation service franchise on specifications prepared by the Aviation Board. A total of ten bid form sets were sought by persons apparently interested in bidding, however, only two bids were submitted, and these were from Toye and NOTSI.
The Bid Form Proposal consisted of the following: Instructions to Bidders; Appendix AAffidavit; Appendix BBid Proposal; Appendix CQualification From; and Appendix DGeneral Terms and Conditions for the Airport Limousine/Bus Ground Transportation Service.
The significance to be attached to and the interpretation of the provisions of Section 5 of Instructions to Bidders and Appendix CQualification Form, together with NOTSI's compliance or non-compliance therewith are what form the basis of this litigation.
Section 5 of Instructions to Bidders states:
"Evidence of Ability to do Work (Qualification Form):
"Bidders must present evidence that they are fully competent and have the necessary facilities, experience and pecuniary resources to fulfill the conditions of the contract and specifications. To provide the New Orleans Aviation Board with information on this point, bidders must submit, as a part of this proposal information stipulated in the questionnaire attached hereto as Appendix C. Information received in this questionnaire shall remain confidential. Bidders unable to qualify as to the minimum financial and experience requirements, setforth as Appendix C, shall be disqualified. The Board reserves the right to disqualify any applicant, which, in the Board's opinion, does not have adequate qualifications. Failure to include this questionnaire with all questions completely answered may cause disqualification of the bidder, at the discretion of the Board."
Plaintiff complains that NOTSI's original bid did not comply with published specifications in that it failed to present any evidence with its bid of March 3rd that it had the necessary facilities to fulfill the conditions of the contract and specifications; that NOTSI failed to present evidence that it is fully competent and has the necessary pecuniary resources to fulfill the conditions of the contract and specifications; and that NOTSI failed to present evidence that the corporate bidder or any executive member thereof has at least three years operating experience in the field of ground transportation.
Along with its bid, NOTSI did submit Appendix C containing substantially the information requested. It appears that Toye would have us hold that the answer to each *771 question of this form is a specification of the bid. This we are not prepared to hold.
In relating the information sought in the Qualification Form from the bidder to a consideration of the bidder and the bid submitted, this form is not a part of the specification for the performance of the franchise contract. The purpose of the Qualification Form completed is to collect or assemble facts which the Aviation Board considered necessary for an appraisal of the bidder and how the bidder's ability would relate to performance of the contract. The furnishing of such information could well be the beginning point for an independent investigation of ability and competency which the Aviation Board might consider advisable or appropriate of bidders prior to an award of the contract. We find nothing sacramental in the completion of the Qualification Form for it forms no part of the specifications of the proposed contract or bid.
Broadly considered, specifications of a contract can be or may be included within the body of the contract or agreement, or it may form the contents of a separate document properly identified with the contract itself. Generally, specifications have to do with spelling out in detail the quality, quantity, character or conditions under which the subject matter of the contract may be or shall be performed. Specifically, the specifications should be definite, certain, explicit and express.
In the subject bid form, Appendix D General Terms and Conditions for the Airport Limousine/Bus Ground Transportation Service, may properly be designated the specifications of the proposal. This document deals with 26 separate general topics, a detailing of which would serve no purpose herein.
Appellant, Toye, is correct in its position that some of the answers to questions posed of the bidder, NOTSI, in the Qualification Form were not answered; however, whatever was lacking therein was supplied in the hearing conducted by the Aviation Board and the Council on the part of either Toye or NOTSI.
In examining this form more closely in relation to the specific areas wherein Toye urges NOTSI was deficient, we find this: That whether NOTSI had the necessary facilities, experience and pecuniary resources to fulfill the conditions of the contract, in the absence of a specification detailing and/or defining the terms necessary facilities, experience and pecuniary resources, was a matter which addressed itself to the judgment of the Aviation Board, and on review of the Aviation Board's recommendation, by the Council.
In Housing Authority of Opelousas, La. v. Pittman Const. Co. (1959) 5 Cir., 264 F.2d 695, 702, in commenting on two therein cited cases, the court stated:
"* * *
"In that case the Policy Jury (equivalent to a Board of County Commissioners) in good faith, rejected the lowest bid on a contract for gravel and awarded the contract to the next low bidder, because members of the Policy Jury knew of their own knowledge that the next low bidder could furnish a better grade of gravel. In addition, the lowest bidder was a small concern and not as responsible financially as the next low bidder. Notwithstanding, the Louisiana Supreme Court annulled the contract.
"The general principles applicable to this situation are discussed in St. Landry Lumber Co. v. Mayor and Board, 1924, 155 La. 892, 99 So. 687, 690. The Court said: `We agree with counsel for defendant that the responsibility of the bidder is to be determined, not alone by his financial ability to perform the work, but that his experience and reputation for satisfactory work are of equal importance.' Nevertheless, said the court: `The law does not permit the arbitrary selection of one which is higher and the rejection of others which are lower, and made by persons more responsible and better qualified to do the work. In this, *772 like all other cases, the discretion is to be exercised in a fair and legal manner and not arbitrarily. While the petition does not charge the defendants with having acted fraudulently, yet the facts alleged, if true, amount to an arbitrary abuse of discretion, and the only way to determine these issues is by a review of defendants' action after submission of the evidence.'
" From these and other cases it is clear that Louisiana follows the general rule of vesting an awarding body with discretion subject to judicial review. Courts will not substitute their judgment for the good faith judgment of an administrative agency, but an awarding body's administrative discretion must be exercised in a fair and legal manner and not arbitrarily.
"The Board has the right to be wrong, dead wrong; but not unfairly, arbitrarily wrong."
Toye argues with force that for a bid to be valid it must comply with bid specifications and that all bidders are bound by the published specifications, and further that where there is a substantial variance between the specification and the bid, the bid must be rejected. Moreover, there must be no post-bid changes in specifications.
Unquestionably such is the law of this State. However, for the reasons stated hereinabove, the information sought of the bidders relative to facilities, experience and pecuniary resources was background data and was not set forth as a specification. This is not to say that such information could not have been required as a specification of the bid provided it had met the definition of a specification as stated supra.
It follows necessarily that as the terms facilities, experience and pecuniary resources were not defined and the bid form in no wise attempts to delineate what facilities, experience and pecuniary resources the bidder must possess or be able to muster to be considered, if otherwise competitive, a successful bidder, we must hold that adequacy of these properties and qualifications are to be determined by the Aviation Board and Council on the individual basis of the respective bidder in the exercise of their discretion.
By reply brief, Toye argues that although it does not contend that NOTSI had to have the necessary Certificates of Public Necessity and Convenience (CPNC) at the time it submitted its bid, it "does contend that NOTSI had to submit evidence with its original bid that it had the necessary facilities and pecuniary resources so that it could and would comply with the law and the specifications (including ownership of vehicles in order to secure issuance of the necessary CPNCs). This NOTSI failed to do; in fact, NOTSI's brief shows that NOTSI is relying on alleged out-of-court assurances by City officials that the City intends to ignore the law at NOTSI's request." The ultimate of Toye's argument is that we should consider NOTSI's inability to obtain CPNCs for the reason that there is no provision in Article V of Chapter 12 of the City Code for the issuance of a CPNC to a lessee of any vehicle. It is Toye's position that before a CPNC can issue, the party applying therefor must be the owner of the vehicle to which the tag must be affixed.
This argument invovles a new issue on which there are no facts in the record to substantiate, it was not used in the trial court as a ground for the issurance of the injunction, was not pleaded as such, was not considered by the trial court, and we may not consider it as a factual issue presented in the first instance in this court on appeal.
We find that the Aviation Board and ultimately the Council of the City of New Orleans had the opportunity to and, in fact, did consider the two bidders, Toye and NOTSI, and their respective actual or *773 prospective facilities, experience and pecuniary resources. In its discretion the Aviation Board recommended to the Council that the bid of NOTSI be accepted and contract for the franchise be granted to NOTSI, all as was shown by resolution passed at the conclusion of the hearing of the Aviation Board at which both parties to the litigation were present. Acting on this recommendation, the City Council did, in fact, enter into the franchise contract with NOTSI.
The reasonable discretion of the administrative boards will not be set aside in the absence of proof of an abuse of such discretion.
We find nothing in this record to substantiate a holding that the Aviation Board of the Council acted arbitrarily, unreasonably or capriciously in granting the franchise for airport limousine/bus ground transportation service to the New Orleans Transportation Service, Inc., and accordingly, the judgment appealed from is affirmed at appellant's cost.
Affirmed.