527 So.2d 339 (1988)
HTW TRANSPORTATION COMPANY, INC.
v.
The NEW ORLEANS AVIATION BOARD, The City of New Orleans, and The City Council of the City of New Orleans.
No. CA-7818.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
Rehearing Denied July 19, 1988.
*340 Stephen I. Dwyer, Pamela Pryor, Backnell, Dwyer, Bencomo & McDaniel, New Orleans, for plaintiff-appellant.
Ronald P. Nabonne, New Orleans, for defendant-appellee New Orleans Aviation Bd.
Okla Jones, II, Robin Giarrusso, New Orleans City Atty. Office, New Orleans, for defendant-appellee City of New Orleans.
Lolis Edward Elie, Wilma T. James, New Orleans, for intervenor Airport-Rhodes Transp., Inc.
Before BARRY KLEES and PLOTKIN, JJ.
PLOTKIN, Judge.
Appellant HTW Transportation Co., Inc. seeks reversal of a trial court decision affirming the award of a contract for ground transportation services at New Orleans International Airport to intervenor Airport-Rhodes Transportation, Inc. by appellees New Orleans Aviation Board and New Orleans City Council.
FACTS
The New Orleans City Council owns and operates New Orleans International Airport through the New Orleans Aviation Board, under the provisions of LSA-R.S. 2:351. On August 15, 1986, the City issued specifications and a request for competitive bids for the public ground transportation concession at the airport. The specifications listed a number of qualifications. Among other things, bidders were required to submit a Minimum Annual Guaranteed Payment of at least $300,000 for each year of the contract. The specifications stated that the "top qualified bid" would be selected. Selection factors were to include, but not be limited to, the following items: (1) proposed minimum annual fee, (2) minority participation, (3) proposed equipment and route system, (4) experience and (5) financial capability.
Five bids were opened by the City's purchasing department on September 25, 1986, and ranked by Minimum Annual Payment as follows: Holland/Blue Streak, $2.026 million; HTW Transportation, $2 million; Airport-Rhodes, $1.8 million; Airport Shuttle, $1.68 million, and Acadia Transportation, $1.68 million. The bids were not ranked in relation to the other areas of consideration listed in the specifications.
The five bidders made presentations and answered questions posed by members of the Concession Committee of the Aviation Board on November 10, 1986. Sometime after the presentations were made, the top bidder, Holland/Blue Streak, was disqualified based on the Board's discovery of the company's alleged performance and financial difficulties. The next two highest bidders, HTW and Airport-Rhodes, were requested to submit written management plans.
After receipt of the management plans, the Concession Committee recommended Airport-Rhodes as the "highest and best airport ground transportation bid," following evaluation of the selection criteria and other factors. In making this recommendation, the Concession Committee presented a report to the Aviation Board in which it cited the following factors: (1) Airport-Rhodes guaranteed construction of two kiosks and employment and use of "starter" on a 24-hour basis, seven days a week, *341 all at no cost to the Board. (2) Airport-Rhodes has 88 percent minority/women ownership. (3) The management plan presented by Airport-Rhodes was superior because it proposed use of smaller, "more appropriate" vehicles and because it used a better revenue control system, involving tickets rather than cash, which fit into the Aviation Board's future revenue control system. The report also summarized the bids of Airport-Rhodes and HTW on the basis of nine factors. Airport-Rhodes received positive ratings in the following categories: management, operational plan, minority participation, indirect revenue, flexibility of bid, fleet, local participation and marketing. HTW received positive ratings in these categories: minimum cash guarantee, local participation and marketing.
Based on the committee's recommendation, the Board awarded the contract to Rhodes on January 7, 1987. That action was approved and confirmed by the City Council on January 22, 1987. This appeal followed.
Applicable law
The first issue to be decided is which state statute, if any, applies to the award of the ground transportation concession. HTW claims that the award to Airport-Rhodes was improper under Louisiana's Public Bid Law and/or Procurement Code and under the City's Home Rule Charter. Appellees do not contest the application of the Home Rule Charter, but claim neither of the state statutes cited by HTW applies.
Louisiana's Public Bid Law, found at LSA-R.S. 38:2211 et seq., states, in pertinent part, as follows:
2212. Advertisement and letting to lowest responsible bidder
A. (1)(a) All public work exceeding the contract limit as defined herein, including labor, materials, and all purchases of materials or supplies exceeding the sum of five thousand dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part.
(b) The provisions and requirements of this Section and those stated in the advertisement for bids shall not be considered as informalities and shall not be waived by any public entity.
Section 6-307 of the Home Rule Charter of the City of New Orleans, dealing with Contracts, provides, in pertinent part, as follows:
(5) Except in the purchase of unique or noncompetitive articles, competitive bids shall be secured before any purchase, by contract or otherwise, is made or before any contract is awarded for construction, alteration, repair or maintenance or for the rendering of any services to the City, other than professional services, and the purchase shall be made from or the contract shall be awarded to the lowest responsible bidder after advertisement prescribed by ordinance or by applicable State law. (Emphasis added.)
The appellees argue that the Public Bid Law does not apply to the contract at issue because it is a contract for services or for a franchise, neither of which are enumerated in LSA-R.S. 38:2212. The trial judge agreed with this position, stating in his reasons for judgment that the service contract at issue is of a "fundamentally different kind" than a contract for the construction of public works or the purchase of materials and supplies, which the statute was designed to cover.
We reverse that decision. This court has previously held that the Public Bid Law, when read in conjunction with the provision of the City Charter quoted above, "requires all contracts for goods or services... to be offered for public bids unless the contract comes within one of the stated exceptions." (Emphasis added.) New Orleans Transfer Co. v. City of New Orleans, 284 So.2d 362, 363 (La.App. 4th Cir. 1973). That conclusion is also supported by two other Fourth Circuit opinions, Council of the City of New Orleans v. Morial, 390 So.2d 1361 (La.App. 4th Cir. 1980) and Transportation Displays, Inc. v. City of New Orleans, 346 So.2d 359 (La. *342 App. 4th Cir.1979). Both of those cases assume that Section 6-307(5) of the Home Rule Charter requires application of the Public Bid Law to contracts for services entered by the City of New Orleans, and deal with whether the subject service falls under the exception for "professional services." In the instant case, none of the parties claim the ground transportation contract falls under the exception for "professional services." Therefore, we hold that the contract for ground transportation services is subject to all the provisions of the State Public Bid Law.
Since the jurisprudence clearly establishes that the contract at issue is subject to Louisiana's Public Bid Law, consideration of the applicability of the State Procurement Code is unnecessary.
Legality of the Contract
We now turn to consideration of whether the City and Board conformed to the applicable public bid laws and jurisprudence in awarding the ground transportation service to Airport-Rhodes.
The Public Bid Law is prohibitory in character because its purpose is to advance the interests of the tax-paying citizens. Haughton Elevator Division v. State, 367 So.2d 1161, 1165 (La.1979). The jurisprudence interpreting the Public Bid Law has established a right in the lowest responsible bidder to receive the advertised contract, if any is let as a consequence of the biddings. Id. In the instant case, the highest responsible bidder had the right to the contract because the governmental entities, the Aviation Board and the City, will receive the "minimum annual payment" or a percentage of the revenue from the successful bidder in return for the privilege of providing the ground transportation service. This right is entitled to due process protection, which means that any bidder who is disqualified must be granted a hearing. Id. The statute does give the awarding authority the necessary discretion to determine the responsibility of the bidders, but does not allow the arbitrary selection of a higher (lower) bidder based on "intangible" factors not addressed in the project specifications. Pittman Construction Co. v. Parish of East Baton Rouge, 493 So.2d 178, 191 (La.App. 1st Cir.1986), writ denied, 493 So.2d 1206 (La.1986). With few exceptions, the duty of the agency to award the bid to the lowest (highest) bidder is considered ministerial and not judicial so that the contract must be awarded to the bidder whose bid is actually the lowest (highest) in amount. T.L. James v. Jefferson Parish Council, 245 La. 818, 161 So.2d 597, 599-600 (La.1963). Since the 1982 and 1983 amendments to the Public Bid Law, the awarding agency's discretion has been restricted to require "just cause" for the rejection of the lowest (highest) responsible bidder. Pittman Construction Co., supra, 493 So.2d at 191.
In the instant case, HTW is the presumed "highest responsible bidder." As the bidder with the second highest minimum annual payment, HTW acquired the right to receive the bid when the highest bidder, Holland/Blue Streak, was properly disqualified following a hearing. Appellees seek to justify both their selection of a lower bidder and their failure to provide HTW with a hearing on the basis of their contention that HTW was not "disqualified," it was simply "rejected." However, nothing in the statute or the caselaw allows a distinction between the two.
The appellees' attempt to distinguish between "disqualification" and "rejection" requires some explanation. Appellees claim they properly awarded the contract to Airport-Rhodes, the lower bidder, because it was the "best responsible bidder." They claim that Airport-Rhodes was "better" than HTW for a number of reasons, such as the "superiority" of its management plan and its commitment to build two kiosks and employ a "starter" at no cost to the airport or the City. However, the Board and the City readily admit that HTW fulfilled all the requirements set out in the bid specifications and that it was thus a "responsible bidder." The City and the Board claim that they had a right to look at all the characteristics of the responsible bidders to determine which would be the "best" company to provide the service and that they should not be limited to selection *343 of the responsible bidder who makes the highest bid. However, the jurisprudence requires award of the contract to the "lowest (highest) responsible bidder" and does not allow the awarding agency to make such arbitrary distinctions as which of the bidders is the "best." Since HTW met all the requirements delineated in the invitation to bid, unless there was grounds to disqualify HTW, and apparently none existed, it should have been awarded the bid.
Appellees are entitled to consider "intangibles" such as the type of vehicles which each bidder intends to use only to the extent their preferences are communicated to all the bidders. The bids specifications note that the proposed equipment and route system to be used by the bidders is one of a number of selection factors, but fails to indicate that smaller vehicles and limosines are preferable to larger buses. The specifications simply state that qualified bidders must be capable of providing a "fleet of vehicles which can accommodate demand adequately as well as comfortably." If the City and Aviation Board meant to award the contract only to someone who would provide smaller vehicles as opposed to buses, the specifications should have made that clear.
The same is true regarding the other factors which the appellees claim made Airport-Rhodes a better bidderuse of starters, use of tickets as opposed to an all-cash system and intention to build two kiosks. The construction of two kiosks was mentioned in the specifications, but it was not a condition of qualification. The documents state simply that the successful bidder "may, at its own expense, construct, maintain and operate two portable starter's kiosks adjacent to the Airport Terminal loading zone." If agreement to construct the kiosks was to be a condition of qualification, the specifications should have made that clear. Regarding the starters, all bidders who constructed kiosks were required to agree to have a uniformed starter on duty at the kiosks during peak traffic periods. Use of tickets as opposed to cash is not mentioned anywhere in the specifications.
The City and the Board effectively changed the specifications after the fact and awarded the contract to the bidder whose proposal they preferred, based on non-specific standards. Postbid changes in the specifications are prohibited by the Public Bid Law, Toye Brothers Yellow Cab Co. v. City of New Orleans, 264 So.2d 768, 772 (La.App. 4th Cir.1972), which was enacted for the express purpose of providing fairness to all persons interested in bidding on the job. State v. I. W. Eaton Construction Co., 392 So.2d 477, 480 (La.App. 1st Cir.1980). The awarding agency may not arbitrarily change the specifications in order to award the contract to the bidder of its choice; the contract must be let as it is advertised. W.R. Aldrich and Co. v. Gravity Drainage District, 238 La. 190, 114 So.2d 860, 863 (1959). We therefore hold that the award of the contract to Airport-Rhodes was arbitrary and illegal.
Conclusion
Louisiana law allows an unsuccessful bidder on a contract advertised to be let under the Public Bid Law to sue to set aside the award of the contract to another bidder and may enjoin the awarding agency from execution of such contract, where, as here, the agency arbitrarily rejected the low (high) bid. Budd Construction Co., Inc. v. City of Alexandria, 401 So.2d 1070, 1076 (La.App. 3d Cir.1981), writ denied, 404 So.2d 1262 (La.1982). Therefore, the trial court's dismissal of HTW's rule for preliminary injunction and recall of the temporary restraining order was improper. HTW is entitled to the preliminary injunction.
However, since the City and the Aviation Board reserved the right to reject any and all bids, this court has no authority to require the acceptance of HTW's bid. D.J. Talley & Son, Inc. v. City of New Orleans, 303 So.2d 195, 197 (La.App. 4th Cir.1974). Therefore, this case is remanded to the Aviation Board for further consideration. If the Board choses to award the ground transportation service on the basis of the specifications previously advertised, the contract must go to HTW. Otherwise, the Board may chose to reject all bids and *344 readvertise the project to reflect its requirements in the specifications, and must do so within 30 days after a final judgment.
All costs of these proceedings are assessed against the appellees.
REVERSED AND REMANDED.
BARRY, J., concurs.