583 So.2d 598 (1991)
PENSION INVESTMENT CORPORATION OF AMERICA
v.
EAST BATON ROUGE PARISH SCHOOL BOARD and Albertson's, Inc.
No. 91 CA 0230.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Rehearing Denied September 4, 1991.
*599 Alfred B. Shapiro, Baton Rouge, for plaintiff-appellant Pension Inv. Corp. of America.
Harold J. Adkins, Robert Hammonds, Baton Rouge, for defendant-appellee East Baton Rouge Parish School Bd.
William R. D'Armond, Baton Rouge, for defendant-appellee Albertson's Inc., et al.
Before SAVOIE, CRAIN and FOIL, JJ.
SAVOIE, Judge.
From the granting of motions for summary judgment in favor of the defendants, East Baton Rouge Parish School Board (School Board) and Albertson's, Inc. (Albertson's), plaintiff, Pension Investment Corporation of America (PICA), appeals.
PICA filed suit for a permanent injunction to prevent the School Board from proceeding with the sale of property it owned to Albertson's, the highest bidder on the property, which was located on College Drive in Baton Rouge and known as the Valley Park Continuing Education Center. PICA claimed that the School Board could not sell the property to Albertson's because the sale did not take place within the time set forth in the bid advertisement and because the School Board had no authority to extend the time for passing the act of sale. PICA contended that the School Board's extension of time granted to Albertson's so that the School Board could correct a title defect was invalid and that the School Board must award the bid to it as the second highest bidder.
The parties all agree on appeal that the key facts are undisputed. They are as follows:
1. In December, 1989, the School Board issued a document entitled "Bid Form" advertising 5.32 acres of the Valley Park property for sale under the provisions of LSA-R.S. 41:891-894.
2. The Bid Form provided that the School Board warranted title to the property being sold.
3. The exhibit attached to the Bid Form showing the Valley Park property contained the following notation: "Note: Area marked `PARA STREET' is included in bid."
4. The Bid Form called for an act of sale to be passed within 180 days after the School Board accepted a bid.
5. After opening the sealed bids, Albertson's was declared to be the highest bidder by about $50,000.00 and PICA was the declared to be the second highest bidder. Both bids exceeded the appraised value of the property as required by LSA-R.S. 41:892 D.
6. The School Board accepted Albertson's bid on February 8, 1990.
7. All bidders were required to submit with the bid a deposit of $25,000.00; following acceptance of the bid by the *600 School Board, the successful bidder was required to deposit an additional $25,000.00. Albertson's complied with these requirements. According to the Bid Form, as long as the deposits were timely, "the successful bidder shall have and hold the sole rights and interest to purchase the property...."
8. A portion of the property to be conveyed was formerly part of a dedicated street (Para Street) and the title thereto was not sufficiently vested in the School Board for it to convey a marketable title.
9. Upon learning of this defect in the title, Albertson's requested an extension from the School Board for the date for closing the sale to resolve this title problem. The School Board approved a ninety day extension.
The trial court granted the motions for summary judgment filed by Albertson's and the School Board, dismissed PICA's suit and ordered cancellation of the notice of lis pendens filed by PICA.
PICA urges that the trial court erred in holding that the School Board had the authority to grant an extension to Albertson's and in holding that the extension was properly granted.
We find no error. PICA basically argues that the School Board could not legally extend the closing deadline for the sale of the property. We find no prohibition against such an extension when, as in the circumstances of this case, it was granted for good cause, i.e., for the seller to cure a title defect.
The procedure for selling unused school board property is found in LSA-R.S. 41:891 and 892. According to LSA-R.S. 41:891, a parish school board has authority to sell any immovable property it owns which it determines is no longer needed for school purposes and where "the best interest of the public school system would be served by the sale of such lands, ..." The School Board is authorized to sell the land at public auction or under sealed bids in accordance with LSA-R.S. 41:892. Under LSA-R.S. 41:892, the sale under sealed bids is to be made by the president of the School
Board after advertisement. LSA-R.S. 41:892 D and E state as follows:
On the date named in the advertisement if the property is to be sold under sealed bids, the bids shall be opened in the offices of the school board at the hour designated in the advertisement. The property shall be sold to the highest bidder upon such terms and conditions as the school board shall determine. The deed shall contain the usual security clauses and a stipulation to pay ten per cent attorney's fees in the event it becomes necessary to secure the services of an attorney for the purpose of collection. The school board shall reserve the right to reject any and all bids, and all bids shall be rejected in the event the highest bid is not equal to the appraised value of the property to be sold.
E. The deed of the president of the school board shall be full and complete evidence of the sale, shall convey a good and valid title to the property sold and shall have the force and effect of a notarial act.
(Emphasis ours).
Our review of the jurisprudence reveals only one case dealing with LSA-R.S. 41:891 and 892. In Foti v. Orleans Parish School Board, 358 So.2d 353 (La.App. 4th Cir. 1978), the Fourth Circuit held that the school board was required to award the bid to buy unused school property to the sheriff where his bid exceeded the appraised value of the property, despite the school board's fears about the effect on the neighborhood from the proposed use of the property for incarceration facilities. In reviewing the action of the School Board rejecting the sheriff's bid, the court applied the standard of review used in analogous cases under the public bidding statute, LSA-R.S. 38:2212, whereby a public body has discretion in rejecting the bid of the lowest responsible bidder which must not be exercised in an arbitrary and capricious manner. The court found that the school board abused its discretion in rejecting the sheriff's bid.
In the case at bar, the trial judge in his oral reasons for judgment stated:

*601 I don't think it's a close question, Mr. Sharpiro [sic], in my opinion. There's clearly no prohibition in those two statutes involving School Boards [sic] selling of real estate and even analogize that to the public bid laws, I don't see this extension of this closing to be any change in substance at all and it's not prohibited, I think the School Board has the right and every right to do what they did, to get the very highest bid for this property. And if arbitrary and capricious is an issue I think the School Board's actions were quite reasonable and for those reasons the court will grant the motion for summary judgment....
We agree with the trial judge that nothing in LSA-R.S. 41:891 and 892 prohibits the School Board from extending the time for sale.[1] We further agree with the trial judge that in relying on the public bid laws by analogy, the Board's conduct in extending the time for the sale by ninety days so that it could cure a title defect was not arbitrary or capricious. Once the bid was accepted by the School Board there existed a binding and enforceable contract between Albertson's and the School Board. Here it was not Albertson's which needed the time to uphold its end of the contract but the School Board which needed time in order to remove a cloud from its title so that it could convey the property to Albertson's by a valid warranty deed. Under the circumstances of this case, we find that the actions of the School Board in granting a ninety day extension for this purpose to be reasonable and therefore neither arbitrary nor capricious.[2]
The underlying reasoning behind the public bid law is to ensure that all persons dealing with the state or its political subdivision are treated equally, and at the same time to ensure that a fair price is secured for the property. See Foti, 358 So.2d at 356.
PICA contends that the extension of time was a post bid change to the contract which is prohibited, citing Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4th Cir.), writ denied, 263 La. 102, 267 So.2d 210 (1972) and HTW Transportation v. New Orleans Aviation Board, 527 So.2d 339 (La.App. 4th Cir. 1988). We find these cases distinguishable from this case.[3] Had the School Board sold the Valley Park property without the Para Street property, the School Board would have been guilty of changing the bid specifications after bid openings. Had the School Board sold the property without remedying the title defects, it would have been subject to liability in contract or warranty, in violation of the terms of the bid specifications that it warranted title to the property.
Albertson's and the School Board answered the appeal alleging that the appeal was frivolous and asking for damages *602 and attorney fees. LSA-C.C.P. art. 2164 provides for damages for frivolous appeals. The provision of this article authorizing such recovery is penal in nature and must be strictly construed. Weatherall v. Department of Health and Human Resources, 432 So.2d 988 (La.App. 1st Cir.), writ denied, 437 So.2d 1150 (1983). Where, as here, the contentions on appeal are without merit, but raise legitimate issues, damages for frivolous appeal are not allowed. See Sample v. Sample, 432 So.2d 376 (La.App. 1st Cir.1983).
For the above reasons, the judgment of the trial court is affirmed at PICA's (plaintiff-appellant's) costs.
AFFIRMED.
NOTES
[1] PICA argues that the act of sale should have been passed at the latest as of August 8, 1990 and that Albertson's extension was not formally granted until August 9, 1990. Based on these arguments, PICA contends that the extension was ineffective because the contract had expired. We find these contentions have no merit because we find the School Board had the authority to grant an extension under the circumstances of this case.
[2] We pretermit discussion of the School Board's argument that PICA's action is moot, because we have found that PICA is not entitled to any relief on the merits of the action. Furthermore, we note that the statements in briefs that the sale between the School Board and Albertson's was passed on January 25, 1991 (after a second extension was granted) are not supported by any evidence in the record.
[3] In Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4th Cir. 1972), the court held that where the bid specifications did not require information as to the bidders' facilities, experience, and pecuniary resources or set forth the requirements in these areas, the city could determine the adequacy of the bidders in these areas on an individual basis in the exercise of its discretion.

In HTW Transportation v. New Orleans Aviation Board, 527 So.2d 339 (La.App. 4th Cir. 1988), the court held that the award of a contract for airport ground transportation services to a bidder other than the highest bidder was arbitrary and capricious; in so finding the court held that the public body effectively changed the bid specifications after the fact by placing greater emphasis in awarding the bid on the use of smaller vehicles and limousines and on the construction of kiosks. These factors were not emphasized in the bid specifications.