653 So.2d 538 (1995)
NEW ORLEANS ROSENBUSH CLAIMS SERVICE, INC.
v.
The CITY OF NEW ORLEANS.
No. 94-C-2223.
Supreme Court of Louisiana.
April 10, 1995.
Rehearing Denied May 11, 1995.
*540 Salvador Anzelmo, Thomas W. Milliner, A. Mark Flake, for applicant.
Avis M. Russell, City Atty., Stephen I. Dwyer, Susanne Cambre, Richard B. Eason, II, Adams & Reese, for respondent.
W.P. Wray, Jr., Christopher P. Pierce, for amicus curiae La. Associated Gen. Contractors Inc.
Charles L. Patin, Jr., for amicus curiae La. Municipal Ass'n.
CHARLES R. LINDSAY, Justice Pro Tem.[1]
The trial court granted an injunction in favor of the plaintiff, New Orleans Rosenbush Claims Service, Inc., preventing the defendant, City of New Orleans, from awarding a contract for administrative services under a new bid proposal. The trial court also issued a writ of mandamus compelling the City to award the contract to Rosenbush, the low bidder under the original bid proposal. The court of appeal reversed, holding that the City could not be required to accept the low bid on a project when it had reserved the right to reject "any and all bids." For the reasons assigned below, we reverse the judgment of the appellate court and reinstate the original trial court judgment.

FACTS
The combined provisions of the City Public Bid Law found in Section 6-307(5) of the Home Rule Charter for the City of New Orleans and the State Public Bid Law in LSA-R.S. 38:2211, et seq., require that contracts for any services, other than "professional" services, be let out by public bid.[2]
Section 6-307(5) of the Home Rule Charter of the City of New Orleans provides:
(5) Except in the purchase of unique or non-competitive articles, competitive bids shall be secured before any purchase, by contract or otherwise, is made or before any contract is awarded for construction, alteration, repair or maintenance or for the rendering of any services to the City, other than professional services, and the purchase shall be made from or the contract shall be awarded to the lowest responsible bidder after advertisement prescribed by ordinance or by applicable State law. [Emphasis added.]
Rosenbush was one of four companies that submitted bids to provide "administrative services" for the City's self-funded workers' compensation program for a one-year period beginning May 1, 1993, and ending April 30, 1994, pursuant to a request for bids, proposal FTC-#2618.[3] The bid proposal contained the following provision in its general conditions and instructions to bidders:
The Department of Finance, Bureau of Purchasing, reserves the right to reject any and all bids and to waive any informalities.
The bids were received and opened on March 31, 1993 and tabulated on April 1, 1993. Two of the other bids were disqualified, leaving Rosenbush as the lowest qualified bidder.
However, more than 30 days later, on May 17, 1993, the City sent a letter to Rosenbush and the other remaining bidder which stated:
We desire to reject all bids because we have determined that the contract should be awarded as a Professional Service Agreement, pursuant to the City's RFP Policy and because we desire to open the scope of service under the RFP Policy, both of which are in the best interest of the City.
*541 On July 9, 1993, Rosenbush filed suit seeking a preliminary and permanent injunction to prohibit the City from taking any steps to award the contract pursuant to a new bid proposal. It also sought a writ of mandamus requiring the City to award the contract to Rosenbush pursuant to FTC-# 2618. Rosenbush contended that, as low bidder, it was entitled to be awarded the contract and its bid could not be rejected in the absence of "just cause" to do so. Further, it was claimed that the City's failure to fulfill its ministerial duty by awarding the contract to the lowest responsible bidder justified the issuance of a writ of mandamus ordering the City to award the contract to Rosenbush. Following a hearing, the trial court rendered judgment in favor of Rosenbush, granting the preliminary injunction and issuing the writ of mandamus.
The City appealed. The court of appeal reversed the trial court judgment. See New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-0066 (La.App. 4 Cir. 5/17/94), 641 So.2d 545. On original hearing, the court relied upon its holding in HTW Transportation Company, Inc. v. New Orleans Aviation Board, 527 So.2d 339 (La. App. 4th Cir.1988), writs denied, 532 So.2d 121, 532 So.2d 122, and 532 So.2d 129 (La. 1988), to find that a bidding authority could not be required to accept the low bid on a project when the bidding authority had reserved the right to reject any and all bids, as the City had done in the present case. On rehearing, the Fourth Circuit reaffirmed its holding in the present case on original hearing. It also confirmed its prior holding in HTW Transportation Co., supra. It rejected Rosenbush's contention that, under the 1982, 1983 and 1991 amendments to the State Public Bid Law, specifically LSA-R.S. 38:2214(B), "just cause" is required for the rejection of bids, even if the bidding authority decides to reject all bids. Instead, the court concluded that "just cause" was only one reason to reject bids, and there was "no indication that the amendments were intended to restrict a public entity's right to reject all bids for other reasons." The court further found that this conclusion was supported by the provisions of LSA-R.S. 38:2215, which requires the public entity to act within 30 days of receipt of bids to either "award said contract to the lowest responsible bidder or reject all bids." The court interpreted this statute as requiring the public entity to reject all bids if it failed to award a contract within the 30-day period specified.
We granted Rosenbush's application for writs. New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 (La. 11/29/94), 646 So.2d 390.
The Louisiana Associated General Contractors, Inc. (hereinafter "the Contractors") filed an amicus curiae brief supporting the position of Rosenbush. The Louisiana Municipal Association filed an amicus curiae brief in support of the City.

JUST CAUSE
Rosenbush argues that the Fourth Circuit's decision, holding that a bidding authority may reserve the right to reject all bids "without just cause," is contrary to the provisions of LSA-R.S. 38:2214 and to several cases decided by the First and Second Circuit Courts of Appeal. The City argues that the appellate court correctly interpreted the statute and relied upon the jurisprudence of both the Fourth and Fifth Circuit Courts of Appeal.

Legislative History of LSA-R.S. 38:2214
LSA-R.S. 38:2214(B) of the Public Bid Law presently provides, in relevant part, that "[t]he public entity may reject any and all bids for just cause." [Emphasis added.]
After this statute was first amended and reenacted in 1977, it provided, in pertinent part, that "[t]he public entity may reject any and all bids."[4]See Acts 1977, No. 103, § 1. However, the statute was amended in 1982 and 1983. In Milton J. Womack, Inc. v. Legislative Budgetary Control Council, 470 So.2d 460 (La.App. 1st Cir.1985), the court reviewed this portion of the history of LSA-R.S. 38:2214:
The legislative history of La.R.S. 38:2214 firmly establishes that prior to 1982 a public entity could reject any and all bids. No mention is made of the necessity for cause. However, Acts 1982, Nos. 691 and 695 both *542 changed this section. Act 691 inserted that bids could be rejected "for cause, subject to the appeals procedure as provided in La.R.S. 38:2212(J)." Act 695 also made changes in the previous statute although the part regarding the rejection of bids was left entirely at the whim of the public entity without regard to "cause."
During the 1983 regular session the legislature amended section 2214 in order to reconcile the conflicts created by the 1982 legislation. In its present form La.R.S. 38:2214 A(2) states that "the public entity may reject any and all bids for just cause." The reference to the appeals procedure was omitted. This legislation, Acts 1983, No. 111, was effective August 30, 1983. Thus we conclude that in rejecting any and all bids, a public entity must have "just cause."
Thereafter, in Acts 1991, No. 1043, § 1, the statute was again amended to its present form. Not only was the requirement of "just cause" retained, but an illustrative list of circumstances constituting "just cause" was added.[5]
We note that in the introduction to Acts 1982, No. 691 (the amendment which first added the requirement of "cause") it was stated that one of the reasons for the amendment was "to provide for disqualification of bidders for cause."
Rosenbush argues that the amendments to the statute clearly demonstrate that the legislature intended to change the provision that allowed the bidding entity to reject bids without any reason at all.

Jurisprudence Construing LSA-R.S. 38:2214
At various times, the statute has been construed by all of the appellate courts in this state, except the Third Circuit. While these cases may not be in direct conflict, they are clearly inconsistent and demonstrate an underlying lack of accord on the necessity of "just cause" for the rejection of bids.
First and Second Circuits
In Milton J. Womack, Inc. v. Legislative Budgetary Control Council, supra, the First Circuit Court of Appeal faced a situation wherein an unsuccessful low bidder sought a writ of mandamus to compel the awarding authority to provide it with an explanation of cause for that body's rejection of the plaintiff's bid. The court concluded that, following the 1982 and 1983 amendments to LSA-R.S. 38:2214, "in rejecting any and all bids, a public entity must have `just cause.'" 470 So.2d at 463. In finding that there was a ministerial duty on the part of the public entity to inform a bidder of the reasons for the rejection, the court further stated:
We have already held that La.R.S. 38:2214 mandates "just cause" for the rejection of bids. We do not interpret the action of the legislature in changing the law, La.R.S. 38:2214, from one allowing the rejection of any and all bids without regard to cause to one requiring "just cause" to imply that the public entity need not tell a rejected bidder the "cause" for the rejection. The rejection of bids will be either for "just cause" or will be for an arbitrary and capricious reason. The refusal of the public entity to divulge the reason for the rejection would defeat the purpose of the legislationthe rejection of bids for just cause only. If only the public entity knows the reasons for the rejection of bids, but yet refuses to divulge the reason for the rejection, then what safeguard is there that the rejection was for "just cause"? To conclude otherwise is to make a mockery of the law.
470 So.2d 464.
In Pittman Construction Company, Inc. v. Parish of East Baton Rouge, 493 So.2d 178, 191 (La.App. 1st Cir.1986), writ denied, 493 So.2d 1206 (La.1986), the low bidder on a public works contract sued to annul the award of the contract to another bidder. The trial court permanently enjoined work under the contract and ordered the awarding authority to execute the contract with the plaintiff. The appellate court affirmed the trial court.
In Pittman, the court agreed with the finding in the Womack case that the 1982 and 1983 amendments had restricted the *543 "wide discretion" formerly enjoyed by the awarding authority in rejecting any and all bids:
"Just cause" is the determination to be made by the public entity when considering the rejection of any bid or all bids. If, as decreed by Womack, public entities must have "just cause" to reject any and all bids, then it can no longer be said that public entities have the discretion to reject all bids in the absence thereof. This Court believes that the jurisprudence wherein Louisiana courts have refused to compel award of a contract to the low bidder based on the public entity's right to reject any and all bids has been legislatively overruled or limited by the 1983 amendment to LSA-R.S. 38:2214. Thus, if the public entity does not have just cause to reject the low bidder nor just cause to reject all bids, awarding the contract to the lowest responsible bidder, by right of the statute which is not subject to waiver, becomes a ministerial duty subject to mandatory injunction and/or mandamus. [Citations omitted.]
493 So.2d at 191.
Another First Circuit case addressing LSA-R.S. 38:2214 is C.R. Kirby Contractors, Inc. v. City of Baton Rouge, 612 So.2d 132 (La.App. 1 Cir.1992). In that case, an unsuccessful contractor sued the city to prevent rejection of all bids for a road improvement project after irregularities in the bidding process were uncovered. The trial court issued a writ of mandamus ordering the city to enter into a contract with the bidder. Thereafter, another bidder appealed. However, the court of appeal found that the city had "just cause" to reject all bids because the failure of city engineers to require contractors to place their license number on the exterior of the bid envelope was a violation of the contractor's licensing law. In so ruling, the court discussed the amended statute:
Under the provisions of the Public Contract Law contained in La.R.S. 38:2214 B, the public entity desiring to let a public contract "may reject any and all bids for just cause." The legislature amended this subsection in 1991 to include an illustrative list of what constitutes just cause. The purpose of the Public Contract Law is to insure that tax dollars for public works are spent wisely, that the lowest responsible bidder is awarded the contract, and that favoritism does not factor into the decision making process. In order to promote these purposes the legislature has enacted La.R.S. 38:2214 B requiring public entities to articulate reasons for rejecting any and all contracts.
612 So.2d at 134-135
See also Department of Transportation and Development v. Standard Construction Company of Georgia, 550 So.2d 1327 (La. App. 1 Cir.1989), writ denied, 559 So.2d 120 (La.1990); and Enerland Recovery Services, Inc. v. Parish of Lafourche, 619 So.2d 129 (La.App. 1 Cir.1993). In each of these cases, the court considered whether "just cause" to reject any and all bids had been established.
The Second Circuit had an opportunity to consider the effects of the amendments to LSA-R.S. 38:2214 in Terral Barge Line, Inc. v. Madison Parish Port Commission, 577 So.2d 787 (La.App. 2 Cir.1991). In a footnote, the court noted that prior to 1982, the Public Bid Law, LSA-R.S. 38:2211 et seq., gave the public entity wide discretion to reject any and all bids without regard to cause. 577 So.2d at 791, n. 2. However, the court found that Acts 1982, No. 691, § 1 removed this discretion and required just cause to reject bids under the Public Bid Law. The court further observed that, absent just cause to reject all bids, mandamus could be used to compel the awarding of the contract to the lowest responsible bidder under the Public Bid Law, citing Pittman, supra.

Fourth and Fifth Circuits
In D.J. Talley & Son, Inc. v. City of New Orleans, 303 So.2d 195 (La.App. 4th Cir. 1974), the lowest bidder filed a mandamus suit to compel the City to issue a contract to it after a protest as to the regularity of the bid caused the City to reject all bids. At that time, LSA-R.S. 38:2212, the predecessor to the current LSA-R.S. 38:2214, provided that the "governing authority may reject any and all bids," without any restrictions or qualifications. Consequently, the appellate court held that the court had no power to *544 require the acceptance of a bid and affirmed the trial court's dismissal of the suit.
In 1988, the Fourth Circuit revisited the same area of the law in the HTW Transportation Co. case. An unsuccessful bidder for a contract filed suit to set aside the award of the contract to another bidder and to enjoin the awarding body from executing the contract. The appellate court acknowledged the 1982 and 1983 amendments to the Public Bid Law as restricting the awarding agency's discretion to require "just cause" for the rejection of the lowest responsible bidder, citing the Pittman case. 527 So.2d at 342. However, the court concluded that, since the awarding agency had reserved the right to reject any and all bids, the court had no authority to require the acceptance of HTW's bid. In support of this conclusion, the court cited the Talley case, which was decided prior to the amendment of the statute. Thus, the court remanded the matter to give the awarding agency an opportunity to reject all bids and readvertise.
In deciding Starlight Homes, Inc. v. Jefferson Parish Council, 93-746 (La.App. 5 Cir. 2/9/94), 632 So.2d 3, writ denied, 94-0610 (La. 4/29/94), 637 So.2d 462, reconsideration denied, 94-0610 (La. 6/17/94), 638 So.2d 1079, the Fifth Circuit followed the lead of the Fourth Circuit. There, the awarding authority, the Parish of Jefferson, reserved the right to reject any and all bids in whole or in part. The court stated as follows:
Although that discretion has been limited by the 1982 and 1983 amendments to the public bid law requiring "just cause" for the rejection of the lowest responsible bidder, where the advertisement allows for the rejection of all bids, "just cause" is not required to reject all bids and readvertise the project. See LSA-R.S. 38:2215; [Thigpen] Construction Co., Inc. v. Parish of Jefferson, 560 So.2d 947 (5th Cir.1990); HTW Transportation Co., Inc. v. New Orleans Aviation Board, 527 So.2d 339 (4th Cir.1988).
632 So.2d at 4-5.

Interpretation of LSA-R.S. 38:2214
The City argues that, since the permissive "may," not the mandatory "shall," is used in LSA-R.S. 38:2214(B), the statute does not require "just cause" for rejection of contracts in all instances. Instead, the City contends that "just cause" is merely one reason for which a public entity "may" reject bids if it wishes to do so. Rosenbush and the Contractors maintain that this ignores the legislative history of the statute and fails to give proper effect to the amendments. We agree with the latter argument.
There is no ambiguity in the statute. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written without further interpretation in search of the intent of the legislature. LSA-C.C. Art. 9; In re C.B., Applying for Adoption, 94-0755 (La. 10/17/94), 643 So.2d 1251; Moore v. Gencorp, Inc., 93-0814 (La. 3/22/94), 633 So.2d 1268. The legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law. Louisiana Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800, 809 (1971), overruled on other grounds, Barnett v. Develle, 289 So.2d 129 (La.1974); Helmerich & Payne, Incorporated v. Stephens, 569 So.2d 21, 23 (La.App. 4th Cir.1990).
During the course of several legislative sessions, the legislature amended LSA-R.S. 38:2214 to require that the awarding authority have first "cause" and then "just cause" to reject any and all bids. In its most recent amendment, the legislature even illustrated the sort of circumstances which would constitute "just cause." Clearly, the legislature intended to change the total discretion previously given to awarding authorities which allowed them to reject any and all bids without any explanation. Several of the Fourth and Fifth Circuit cases cited by the City even acknowledge that a change was made by the amendments. See HTW Transportation Company, 527 So.2d at 342; Starlight Homes, 632 So.2d at 4.
*545 The Public Bid Law was enacted to advance the interests of the tax paying citizens, and its purpose is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices. Haughton Elevator Division v. State of Louisiana through Division of Administration, 367 So.2d 1161 (La. 1979); Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029 (La.1990). Requiring public entities to articulate reasons for rejecting any and all contracts is in keeping with this purpose.
Additionally, we note that the City's permissive/mandatory language argument would give the statute a strained construction. Had the legislature used "shall" instead of "may" in LSA-R.S. 38:2214(B), this would have effectively required that the public entity reject any and all bids whenever just cause was found, even if the authority had no desire to do so or the rejection would run counter to the best interests of the public entity. The proper interpretation of the statute is that the public entity must have just cause to reject any bid and, likewise, it must have just cause to reject all bids. This requires that the public entity have a just, reasonable basis for rejecting a bid, yet it does not dictate that it must reject bids on every occasion where such a reason is found to exist.
Having found that the legislature intentionally changed the statute to require "just cause" for the rejection of bids, we now consider Rosenbush's contention that the underlying premise of the City's position is faulty due to its ultimate reliance upon the Talley case. This case was construed in the HTW Transportation case as allowing a public entity seeking bids to subvert the amendments to LSA-R.S. 38:2214(B) simply by placing a reservation in the bid proposal that it may reject any and all bids. However, the recitation of facts does not show that there was any such reservation in the Talley bid proposal. Nor was one necessary at that time because the Public Bid Law still gave the awarding authority unfettered discretion to reject any and all bids without any cause at all. We agree with Rosenbush's argument that Talley, supra, is not authority for completely ignoring and frustrating the clear intent of the legislature in amending LSA-R.S. 38:2214(B) by merely inserting such a reservation in the bid proposal.
Based on the foregoing, we find that the court of appeal erred in finding that the City could circumvent the requirement of just cause under LSA-R.S. 38:2214(B) by merely reserving the right to reject any and all bids in the bid proposal. We disapprove of any interpretation of Talley, supra, and HTW Transportation, supra, to that effect.

Provisions of LSA-R.S. 38:2215
LSA-R.S. 38:2215 states in relevant part:
A. The public entity upon receipt of bids for the undertaking of any public works contract, shall act within thirty calendar days of such receipt to award said contract to the lowest responsible bidder or reject all bids. However, the public entity and the lowest responsible bidder, by mutually written consent, may agree to extend the deadline for award by one or more extensions of thirty calendar days. [Emphasis added.]
The City contends that, under this statute, all bids are automatically rejected if the contract is not awarded within the 30-day period. We decline to accept this interpretation.
On rehearing in the present case, the Fourth Circuit agreed with the City's argument, relying upon its prior interpretation of LSA-R.S. 38:2215 in Bill Roberts, Inc. v. City of New Orleans, 485 So.2d 988 (La.App. 4th Cir.1986) and the Fifth Circuit's decision in Thigpen Construction Company, Inc. v. Parish of Jefferson, 560 So.2d 947 (La.App. 5 Cir.1990).
In Roberts, supra, the Fourth Circuit held that the 30-day period in LSA-R.S. 38:2215 was the limit within which the governing authority had to accept the lowest responsible bid or reject all bids. If it did not award a contract within that time frame, the governing authority had to reject all bids.
The Fifth Circuit similarly ruled in Thigpen, supra. In so holding, both cases cited Donahue v. Board of Levee Commissioners *546 of the Orleans Levee District, 413 So.2d 488 (La.1982).
Rosenbush and the Contractors contend that the above cited cases are questionable authority for the City's position because of their reliance upon Donahue, supra, a case which construed the prior law. At the time Donahue, supra, was decided, LSA-R.S. 38:2214 still allowed the rejection of bids without any cause.
Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984).
Both LSA-R.S. 38:2214 and 38:2215 were amended and reenacted in their present forms in Acts 1991, No. 1043, § 1. They must be reconciled in such a manner as to give full force and effect to each as amended. Thus, LSA-R.S. 38:2215 must be read as implicitly incorporating the standard of rejection for "just cause." As Rosenbush and the Contractors correctly argue, the present LSA-R.S. 38:2214 and 38:2215 should be interpreted together to provide that a public entity has 30 days to do one of the following: (1) award a contract to the lowest responsible bidder; (2) reject all bids for just cause; or (3) extend the deadline by mutual consent with the lowest responsible bidder. In the present case, the City did none of these.
Since the City failed to comply with its obligation to award the contract within the 30-day period, a mandamus action to compel the public entity to award the contract to the lowest qualified bidder was justified. At this point, the City could not avoid its ministerial duty by trying to change the basis of the contract from "administrative services" to "professional services" and readvertise for bids; the 30-day period in LSA-R.S. 38:2215 had already expired; it was simply too late.[6]
Consequently, we find that LSA-R.S. 38:2215 is not authority for justifying the City's refusal to award the contract to Rosenbush.

Professional Services
The City contends that the services which are the subject of the bid proposal were professional services which are exempted from the bid requirement under the City Public Bid Law found in Section 6-307(5) of the New Orleans Home Rule Charter. Rosenbush contends that they are administrative services which are fundamentally clerical and must be publicly bid. As noted previously, Section 6-307(5) of the 1954 Home Rule Charter of the City of New Orleans provides that services, other than professional services, are subject to public bid.
A closely analogous case was presented in Council of City of New Orleans v. Morial, 390 So.2d 1361 (La.App. 4th Cir.1980), writ denied, 397 So.2d 804 (La.1981), in which members of the city council sought a declaratory judgment that a contract for administrative services for the city's employee health care plan was covered by the public bid laws. An argument was made that the services were "professional services" and thus exempt. The court found otherwise:
If these services fall within the definition of "professional services" contemplated by the city charter, the contract forms an exception to the requirement of public bidding necessary for any other service contract. We refer to two previous cases of this court wherein we considered the application of contracts to the charter provisions. In New Orleans Transfer Company, Inc. v. City of New Orleans, 284 So.2d 362 (La.App. 4th Cir.1973) we reaffirmed the general rule relating to the interpretation of public bidding laws as set out in the case of Boxwell v. Department of Highways, 203 La. 760, [14] So.2d 627 (La.1943) that the public bidding laws were enacted in the interest of and for the protection of the tax paying citizens, and that open competitive bidding is a thing to be desired. In the case of Transportation Displays, Inc. v. City of New Orleans, 346 So.2d 359 *547 (La.App. 4th Cir.1977) we held that the question as to whether competitive bidding by firms providing services is feasible and is contemplated by the public bidding laws must be determined by the terms of the contract.
With these principles in mind, we have considered the evidence as to the nature of the services required to be performed under the contract requirements. It is apparent that the vast bulk of the services are basically clerical. Much may be performed by persons of high school education and above who have been trained in the various degrees of skill required for claims adjusting and for work of processing the various applications and applying certain rules and regulations leading to a decision to approve or deny claims. A considerable portion of the work is simply clerical in nature. At the same time, it is apparent that there are decisions that cannot be made by employees in the lower echelon who must consult with their superiors and supervisors to ascertain the proper result in questionable claims, or those claims to which the rules do not clearly apply. These supervisors are required to have a higher degree of skill and expertise in handling these claims. Superimposed upon this structure it is necessary to have at least one person of considerable skill and expertise to exercise the function of account executive. It is he who must oversee the formulation of regulations and coordinate the entire operation with the city's consultants and in accordance with its policies. It is also apparent that there are services to be performed in connection with this contract that can only be answered by professionals such as doctors, or on the insurance side by underwriters or actuaries. However, it is equally apparent that these services form only a small portion of the services contracted for and are usually obtained on a consulting basis in the case of a smaller, independent contractor as here, or furnished in house by other departments of a larger contractor such as insurance companies providing such services.
390 So.2d at 1364.
An examination of the present bid proposal demonstrates that the services sought are primarily administrative or clerical. They include maintaining claim files, preparing reports, processing claims and making payments on claims. Many of the services will be performed under the direct supervision of or within the rules and regulations established by the City Attorney's Office. Serious policy-making decisions will be made by the City Attorney's Office. We further note that the services described in bid proposal FTC-# 2618 are virtually identical to those described in the four previous bid proposals, particularly FTC-#2324 which was awarded to Rosenbush in 1989.
As the contract sought administrative services, instead of professional services, it was not exempt from public bidding under the provisions of the New Orleans Home Rule Charter.

CONCLUSION
For the reasons assigned above, we reverse the judgment of the court of appeal and reinstate the judgment of the trial court. The matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Judge Charles R. Lindsay of the Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis. Pursuant to Rule IV, Part 2, § 3, Justice Johnson was not on panel.
[2] Although the State Public Bid Law primarily deals with "public works" contracts, that statute, read together with the provision of the City Charter requiring public bids for services contracts in accordance with state law, requires the City to comply with all facets of the State Public Bid Law in the issuance of its contracts, including those for "administrative services."
[3] On four previous occasions (1979, 1982, 1985 and 1989), Rosenbush had been awarded the contract as the lowest bidder on successive bid proposals.
[4] Before Acts 1977, No. 103, this subject matter had been contained in LSA-R.S. 38:2212, which had also provided, in relevant part, "The governing authority may reject any and all bids."
[5] The illustrative list of circumstances justifying rejection of bids is couched in terms of public works contracts, but those circumstances, by analogy, can be applied to the administrative services contract of the type under consideration here which must be submitted to public bid by virtue of the Home Rule Charter of the City of New Orleans.
[6] This should not be construed as meaning that the City may not contemplate a contract for "professional services" for its self-funded worker's compensation program in the future; in the instant case, the City did not properly or timely pursue such a course.