560 So.2d 947 (1990)
THIGPEN CONSTRUCTION COMPANY, INC.
v.
The PARISH OF JEFFERSON.
Nos. 90-CA-37, 90-C-102 and 90-C-113.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1990.
*948 Wayne M. Le Blanc, Metairie, for intervenor-appellant, York Const. Co., Inc.
John I. Hulse, IV, James A. Oswald, Hulse, Nelson & Wanek, New Orleans, for plaintiff-appellee, Thigpen Const. Co., Inc.
Louis G. Gruntz, Jr., Deputy Parish Atty., Michael D. Peytavin, Asst. Parish Atty., Harahan, for defendant-relator, Parish of Jefferson.
Before KLIEBERT, BOWES and GAUDIN, JJ.
BOWES, Judge.
Intervenor-appellant, York Construction Company, Inc. (hereinafter "York") and defendant, Parish of Jefferson (hereinafter "the Parish") appeal a judgment of the district court in favor of Thigpen Construction Company (hereinafter "Thigpen") granting a preliminary injunction against the Parish declaring the award of a contract for road improvements (and subsequent execution of the contract) to York to be an absolute nullity; enjoining the Parish from proceeding with the work during pendency of the injunction, and prohibiting the Parish from awarding the contract to anyone but Thigpen. For the reasons to follow hereinafter, we set aside the judgment and dismiss the action.
On September 12, October 5, and October 12, 1989, the Parish advertised for bids for a construction project entitled "Lafreniere Park Scenic Loop Road Improvements, A/E Project No. 6650" (hereinafter the "Project"). The advertisement advised that the Parish Council would receive bids until 1:45 p.m., Central Standard Time, Tuesday, October 31, 1989, in the Courthouse Building. The advertisement also contained, among other things, the following pertinent statements:
*949 "Bids received after this time will not be accepted."
and
"The Owner reserves the right to reject any and all bids and to waive technicalities and informalities."
On October 31, 1989, the deadline date for the submission of bids, eleven proposals were received, including those of Thigpen and York. The bids were publicly opened at 2:00 p.m. When the parish buyer received the package submitted by Thigpen, she noted that page eight of the bid form, the signature page, was not included in the packet. The proposal by Thigpen was, for that reason, marked "RejectedAll Bid Requirements Not Met", and was not read aloud. Robert Oswald, president of Thigpen, was present when the bids were read and objected to the rejection of his proposal. He was informed by Ms. Diane Barilleaux, chief buyer for the Parish, of the reason for the rejection. On November 3, 1989, a representative of Thigpen delivered to the office of the Council Chairman a letter attaching the previously omitted signature sheets and requesting that the "clerical omission" be waived, and that Thigpen be awarded the contract because its bid was the lowest (it was lower than that of York by the amount of $36,746.50).
At its meeting on December 6, 1989, the Parish Council adopted a resolution accepting the bid of York for the improvements to be done, and awarding the contract to them, their bid being the lowest of those accepted for consideration.
On December 8, 1989, Thigpen filed a Petition for a Preliminary Injunction directed to the Parish of Jefferson, seeking to enjoin and prohibit it from awarding the contract for the Lafreniere Park Scenic Loop Road Improvements to York Construction Company or any other company or individual besides Thigpen. The hearing was originally set for December 20, 1989. A temporary restraining order was not requested. The Parish filed exceptions of Non-Joinder of an Indispensable Party (York) and Failure to State a Cause of Action on which relief could be granted. On December 20, 1989, a contract was executed between York Construction and the Parish; meanwhile, the hearing was reset to December 29th. York Construction Company thereafter intervened in the proceedings on December 28th.
On December 29, 1989, after taking evidence, the trial court rendered a judgment in favor of Thigpen and against the Parish and York Construction Company, "granting a preliminary injunction against the Parish of Jefferson and declaring the "award" of the contract for the Lafreniere Scenic Loop Road improvements by the Parish to York Construction Co., Inc., and the subsequent signing and execution of a contract between York and the Parish to be an absolute nullity, in violation of the Public Bid Law", the Court having found that the Parish of Jefferson was arbitrary and capricious in its failure to read the Thigpen bid and in its rejection of the Thigpen bid. The judgment also enjoined the Parish from proceeding with the work during the pendency of the injunction, and prohibited the Parish from awarding the contract to anyone but Thigpen. The trial court did not require Thigpen to post security for the preliminary injunction.
The Parish and York filed supervisory writs and devolutive appeals. The appeals were lodged with the appellate court on January 18, 1990. The Parish's Application for Supervisory Writs was granted in part and the preliminary injunction was vacated due to the absence of a bond or other security. Thigpen filed a motion to reset the hearing on the injunction and to fix the bond. The district court thereafter issued a judgment granting a preliminary injunction, based on the evidence received at the original hearing, and set bond at $100,000.00 (Exhibit L, Supp.R. p. 6). The other elements of the December judgment remained the same.
The Parish of Jefferson and York again filed Supervisory Writs and devolutive appeals. This court granted a writ of review, transferred and consolidated the matter with the pending appeal, ordering the Clerk of the district court to supplement the appellate record with all proceedings subsequent to first judgment.
*950 On appeal, the appellees, York and the Parish, assert the following assignments of error:
1. It was error for the trial court to rule that Thigpen's unsigned proposal was a valid bid.
2. It was error to find that the Council acted arbitrarily and capriciously in not permitting Thigpen to supplement and amend its proposal with the signature page three days after the bidding deadline.
3. It was error to rule that Thigpen had presented a prima facie showing that it would prevail on the merits.
4. It was error to refuse to grant the exception of no cause of action.
The bid forms are required by statute to be furnished to all prime bidders who request them (LSA-R.S. 38:2212(A)(1)(e) and, in the present case, Thigpen did receive the bid packet. Such bid documents, admitted into evidence at the hearing, included in Section GC, General Conditions of Contract, the following pertinent provisions:
A. General: (1) All papers bound with or attached to Proposal Form are a necessary part thereof and must not be detached.

. . . . .
C. SIGNING: The Proposal shall be properly signed by the Bidder. If the Bidder is an individual, his name and his post office address must be shown; if a firm or partnership, the name and post office address of each member of the firm of partnership must be shown; if a corporation, the president, vice-president or secretary shall sign, or if the person signing the Proposal is an agent, the said agent must attach written authorization from the president, vice-president or secretary of the corporation, and the Proposal must show the name of the corporation, the name of the state under the laws of which the corporation is chartered, and the names, titles, and business addresses of the officers, and satisfactory evidence of the authority of the officer signing for the corporation.
Section 2(C)
C. No proposal can be withdrawn, modified or corrected after the hour set for opening such Proposals.

. . . . .
SECTION 4: REJECTION OF BIDS
The Owner reserves the right to reject ANY OR ALL Bids, to waive informalities, and to make award as it may elect. Incomplete, informal, or unbalanced Bids may be rejected.

. . . . .
PART II: AWARD OF CONTRACT, BOND, AND GENERAL PROVISIONS
Section 1: AWARD OF CONTRACT
The award of the Contract, if it be awarded, will be by Owner to the lowest responsible Bidder whose Proposal shall have complied with all the requirements necessary to render it formal.
In addition, LSA-R.S. 38:2212, which addresses the letting of public contracts and is applicable to the present contract at issue, states in Section A(1)(b):
The provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be considered as informalities and shall not be waived by any public entity. [Emphasis supplied]
As quoted hereinabove, the required advertisements announced the deadline to receive bids to be October 31, 1989 at 1:45 p.m. and specifically stated that bids received after that time would not be accepted.
York and the Parish argue on appeal that the proposal of Thigpen contained a substantial defect which rendered its attempted bid submittal nonresponsive to the advertisementin effect, a non-bid. For its part, Thigpen argues that this is not a case in which an unsigned bid was submitted, but rather one in which the bid had been signed but which signature page had been inadvertently omitted from the bid package (according to the testimony of Mr. Oswald, president of Thigpen). Therefore, Thigpen avers that upon the submission of the signature page on November 3rd to the Council, before the award of the contract was made, that the Parish had authority to *951 waive the "informality" of failure to timely submit the signed signature pagethat is, that there was no substantial variance from the bid specifications. We disagree.
Thigpen relies heavily on the case of Lorenz v. Plaquemines Parish Commission Council, 365 So.2d 27 (La.App. 4 Cir. 1978), which held that a public body could waive the procedural matter of furnishing a bid bond with the bid. In Lorenz, the bond was inadvertently omitted and later delivered by hand on the same day, and the Plaquemines Parish Council voted to waive the irregularity and award the contract to the bidder anyway. In both Lorenz and L & M Demolition, Inc. v. City of New Orleans, 534 So.2d 27 (La.App. 4 Cir.1988), also relied on by appellee, the courts found that the requirements of a bid bond are permissive in nature and as such are susceptible of waiver.
LSA-R.S. 38:2212A(1)(b) was added to the statutes in 1983, subsequent to Lorenz, although prior to L & M. However, LSA-R.S. 38:2218 still characterizes the bid bond as permissive; furthermore, it is unclear from the reading of L & M whether or not in that case the contract required a bid bond. In any case, we do not find these opinions controlling or dispositive of the facts of the present case.
As delineated above, the general terms of the specific bid at issue required that "the proposal shall be properly signed by the bidder", thus the "signing" of bid was made mandatory by use of the word "shall", that "all papers bound with or attached to the proposal form are necessary and must not be detached" (emphasis supplied); and that no proposal could be modified or corrected, after the hour set for opening. In addition, the Parish reserved the right to reject any and all bids, to waive informalities, and to reject incomplete bids. Under Part II, Section 1, the proposal shall have complied with all requirements necessary to render it formal.
Accordingly, we find that the failure to sign the bid was a substantial failure to comply with the terms of the contract proposal and, therefore, the Parish properly rejected it. We agree with the reasoning of the First Circuit in Bilongo v. Dept. of Health & Human Resources, 428 So.2d 1021 (La.App. 1 Cir. 1983), that bids which deviate from the specifications amount to no bids. A substantial variance between a bid specification and a bid requires rejection of the proposal. Tide Equipment Co. v. Pointe Coupee Par. Police Jury, 312 So.2d 154 (La.App. 1 Cir.1975); Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4 Cir.1972).
The trial court found that the Council was arbitrary and capricious. The oral reasons for judgment indicate that the trial court felt the omission of the signature page was inadvertent and was delivered to the Parish before any acceptance of bids, and that the Council was "on notice" that Thigpen's was the lowest bid:
"... the Court is looking at it in the sense that the Parish had the right to bind the Parish and Thigpen had the duty to accept once the Council passed it's resolution."
We disagree with the learned trial judge and, under the circumstances of this case, we hold it was error to find that Thigpen would have been bound had the Parish accepted its unsigned bid. Failure to sign the bid was a nonfulfillment of a formal requirement and, under Part II, Section 1, as well as LSA-R.S. 38:2212(A)(1)(b), supra, could not be waived by the Parish. Thigpen simply did not bid according to the contract as required in LSA-R.S. 38:2212A(1)(a):
All public work exceeding the contract limit as defined herein, including labor, materials, and all purchases of materials or supplies exceeding the sum of five thousand dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part. [Emphasis supplied]
While not controlling to our determination here, we find the case of Superior Oil *952 Company v. Udall, 409 F.2d 1115 (D.C.Cir. 1969) to contain an analysis applicable to the present circumstances. There, in finding that failure to sign a sealed bid is a matter of substance and failure to do so cannot be waived by the awarding authority, the court found that revenue for the government was of substantial importance. However, the Court found that there were other significant considerations to be weighed and which had importance beyond the particular transaction; those were factors which affect the integrity of the entire governmental program (in that case, of selling oil leases), as well as the whole process of making public contracts with sealed bids:
In the area of public contracts where billions are involved in public building, an accretion to the government of even two million dollars can be a manifestation of a short-sighted "penny-wise, pound-foolish" policy if it is allowed to control all decisions.
The Secretary's concern over the differential between Union and Superior is understandable but we think it misses the central legal issues and the important public policy underlying strict rules in bidding. It is also very important that bidders who comply faithfully and scrupulously with bidding regulations should not in effect be penalized by the errors of less careful bidders who fail to follow correct procedures.

. . . . .
The requirement of steadfast compliance with competitive bidding procedures comports best with the need to promote the integrity of the bidding process. Although such a stance may entail some limitation on the Secretary's discretion, it seems clear that this is an indispensable ingredient to the maintenance of competitive bidding processes which will engender public confidence and that of persons dealing with the Government.
We are further of the opinion that even considering the fact that the Parish would save some $36,000 under Thigpen's proposal, that to permit the bid as submitted, in two stages, would thwart the process of integrity and competitive bidding on public contracts, because, here, the defect was not merely procedural, as in Lorenz and L & M, but was substantive and violative of the statutes. As our Supreme Court found in Haughton Elevator Division v. State, Etc., 367 So.2d 1161 (La.1979):
The statute, insofar as it requires advertising and the obtaining of competitive bids, is a prohibitory law founded on public policy. It was enacted in the interest of the taxpaying citizen and has for its purpose their protection against contracts of public officials entered into because of favoritism and possibly involving exorbitant and extortionate prices.
The provisions of the public contracts laws must be strictly construed. Adams v. Magnolia Const. Co., Inc., 431 So.2d 38 (La.App. 1 Cir. 1983). Accordingly, it has been held that where there is a substantial variance between a bid proposed and a bid accepted, there is no competitive bidding and a contract thus awarded is void. Alexander and Alexander, Inc. v. State, 470 So.2d 976 (La.App. 1 Cir. 1985); Bilongo, supra. Every bidder must be held bound to the terms of the advertising. Gibbs Const. v. Board of Sup'rs. of L.S.U., 447 So.2d 90 (La.App. 4 Cir.1984); Jefferson Parish School Board v. Rowley Company, Inc., 350 So.2d 187 (La.App. 4 Cir. 1977). The advertisement in this case specifically stated that no bids would be accepted after the designated time, 1:45 p.m. on October 31st. Thigpen must be held to that term. Any contract which the Parish may have awarded Thigpen on the unsigned bid would have been void under Alexander and Bilongo, as well as under LSA-R.S. 38:2212 et seq. Such findings render the decision of the Council judicious rather than arbitrary and capricious.
Additionally, contrary to the argument made by Thigpen in brief, the corporate seal is not a requirement of the contract or of the statutes. While the contract documents have a line which provides for a seal on the bid bond and affidavit as to corporate principal, the contracts do not *953 have a specific requirement that the seal must be placed on those forms. As pointed out above, the bid bond is not mandatory anyway, although the affidavit as to corporate principal is required by the contract. However, LSA-R.S. 12:41(B)(1) states:
"Without limiting the grant of power contained in subsection A of this section, it is hereby specifically provided that every corporation shall have authority:
To have a corporate seal which may be altered at pleasure, and to use the same by causing it or a facsimile thereof to be impressed or affixed or in any manner reproduced; but failure to affix a seal shall not affect the validity of any instrument." [Emphasis supplied]
Failure to have signed and included the affidavit would have been fatal to York's bid. Failure to affix the corporate seal specifically does not affect the validity of the instrument.
Finally, where LSA-R.S. 38:2215 and the advertisement, as well as the contract itself, gives the Parish the authority to reject any and all bids, the trial court exceeds its authority by ordering the public entity to award the contract to another bidder. Donahue v. Bd. of Levee Com'rs. of Orleans, Etc., 413 So.2d 488 (La.1982). It is apparent, then, the district court in this case exceeded its authority by ordering that the contract be awarded to Thigpen.
Because of our holding hereinabove, we find it unnecessary to address the remaining assignments of error. For the foregoing reasons, the judgment appealed from is annulled and set aside, and the case is dismissed. All costs are assessed against Thigpen.
ANNULLED AND SET ASIDE; CASE DISMISSED.