638 So.2d 404 (1994)
SYSTEMS PLUS, INC.
v.
EAST JEFFERSON GENERAL HOSPITAL.
No. 94-CA-83.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 1994.
James R. Holmes, John Shea Dixon, Edward Bissau Mendy, New Orleans, for plaintiff/appellant, Systems Plus, A Louisiana Partnership.
Rodney J. Lacoste, Jr., Stassi & Griffith, Metairie, for defendant/appellee, East Jefferson General Hosp.
Before BOWES, WICKER and GOTHARD, JJ.
BOWES, Judge.
Appellant, Systems Plus (hereinafter "S.P."), a Louisiana partnership, appeals a judgment of the district court in favor of defendant, East Jefferson General Hospital (hereinafter "EJGH"), dismissing plaintiff's case. We affirm.

FACTS
In April, 1989, EJGH, a political subdivision of the State of Louisiana, decided to seek bids for the purchase of exam gloves pursuant to the Louisiana Public Bid Law, LSA-R.S. 38:2211 et seq. Accordingly, EJGH advertised that it would accept sealed bids for proposal No. 2786, which would be publicly opened and read on May 2, 1989.
Bidders were informed that the bid specifications and instructions were on file and available gratis from the purchasing department *405 at EJGH. The "Instructions to Bidders" set forth the procedures to be followed by bidders and detailed the information to be provided by the bidders relative to their qualifications, as well as to the quality of the gloves which they proposed to sell.
Appellant submitted its bid, and following the analysis of the bids submitted, it was determined that appellant was the lowest apparent bidder. Subsequently, Mr. Gilbert Charles, owner of S.P., contacted EJGH and was informed that S.P.'s bid contained the lowest price. Thereafter, EJGH's director of material management, Arthur Holdford, requested an opportunity to visit appellant's facilities since EJGH had never purchased supplies from appellant and was not familiar with its operations. Holdford visited appellant's facilities and met with its owner, Mr. Charles, in early August.
On August 22, 1989, EJGH forwarded appellant notice of the disqualification of its bid and informed appellant of the reasons for the disqualification, which included: (1) the attachment of conditions to appellant's bid; (2) the lack of a computer to computer order entry system; (3) the (apparent) inexperience of Systems Plus in supplying gloves to a hospital the size of EJGH from a local inventory; (4) appellant's failure to submit a bid containing firm prices for the three year length of the contract; and (5) appellant's failure to submit evidence that the manufacturers of the gloves it intended to sell EJGH had been manufacturing vinyl or latex gloves for five years. Included in the letter was a statement notifying Systems Plus of its right to an informal hearing to discuss the reasons for the disqualification. It was required that appellant request such a hearing within seven days. On September 25, 1989, appellant's attorney contacted EJGH requesting an informal hearing "in advance of litigation to discuss the disqualification."
On October 13, 1989, EJGH again wrote to S.P. informing appellant that it intended to reject all bids, stating it would provide appellant "an opportunity to present your views if you desire."
A request for a hearing pursuant to this October letter was not made. Instead, S.P. filed suit against EJGH in January of 1990 alleging that it was systematically and tortiously eliminated by conditions imposed after the bid was entered. S.P. asked for damages in the amount of its net lost profits and alternatively, requesting the court to order award of the contract to appellant. Upon learning that EJGH had subsequently awarded the contract to another company, a supplemental petition seeking an injunction was filed by appellant on the morning of trial asking the court to enjoin the contract. This petition was withdrawn by plaintiff at the hearing. Following presentation of the evidence, the court granted judgment in favor of EJGH, dismissing plaintiff's case.

ASSIGNMENTS OF ERROR
On appeal, S.P. has alleged that the trial court erred as follows:
(1) In finding that its bid substantially varied from the bid requirements, and applied a higher standard to it "requiring the bid to be absolutely identical to the bid specification";
(2) That the court failed to recognize the validity of the bid price;
(3) That the court erred in finding that the computer system was not an optional requirement;
(4) That the court applied the incorrect law to the contract presently existing between EJGH and its current supplier "used to justify the refusal to bid the supply needs" of EJGH;
(5) That due process rights of appellant had been violated by failure to be granted a hearing; and
(6) That the court did not give proper weight to the portion of the bid proposal that EJGH could waive informalities in the bids.

EVIDENCE OF TESTIMONY
At trial, Mr. Charles, owner of S.P., testified that he received the bid specifications in two packages. While it is not entirely clear from the testimony,[1] according to Mr. *406 Charles, the original packet contained the form specifying the quantity of gloves to be supplied, along with an "Addendum" to the original specifications with the following requirements:
1. Vendor must guarantee a 95% fill rate on standing order.
2. Vendor must stock inventory locally.
3. Vendor must commit to a three (3) year contract.
4. Vendor must meet F.D.A. requirements for product acceptability.
5. Vendor must have manufactured exam gloves for at least five (5) years.
Two days later, the remainder of the bid package arrived, with the following pertinent provision:
3. Bidder's Qualifications:

The Bidder should have computer to computer order entry system that is compatible to Hospital Systems' Materiel [sic] Management Information System 20 and should be able to provide a confirmation printback of order placed by line item, computer to computer.
4. Rejection of Bids:

East Jefferson General Hospital reserves the right to reject any and all bids and to waive any informalities, and to make award as it may elect. Incomplete, informal or unbalanced bids may be rejected. Reasonable grounds for belief that any one bidder is concerned directly or indirectly with more than one bid will be cause for rejection of all bids wherein such bidder is concerned. If required, a bidder shall furnish satisfactory evidence of his competence and ability to perform work stipulated in proposal. Incompetence to properly perform work will constitute cause for rejection.
7. Length of contract:

Prices to be firm for three years from date of award.
The "Instructions to Bidders" which came with that package stated, in pertinent part:
Bidders shall not attach any conditions or provisions to their proposal. Any foreign conditions or qualifications will render the proposal informal and may cause its rejection.
* * * * * *
FAILURE TO COMPLY WILL BE CAUSE FOR REJECTION OF PROPOSAL.
The letter accompanying the instructions and specifications contained the following paragraph:
East Jefferson General Hospital reserves the right to accept or reject any and all bids, in whole or in part, and waive informalities.
S.P. submitted its bid with the following pertinent clauses attached:
CONDITIONS: a. Minimum quantity of 25 Cases is required per order
b. Prices will be increased for the 2nd and 3rd years based on the rate of national inflation.
According to Mr. Charles, he was notified by EJGH that S.P. had the lowest bid. He spoke with Mr. Holford, who eventually requested to see the facilities of S.P. Holford also asked about the business stability of appellant, requested a list of other customers, and wanted to view appellant's stock.
Charles testified that he offered to amend the minimum order condition, and that Holford informed him that that was not an issue. Further, Charles agreed to put in a telephone modem hookup, and also agreed to waive the inflation clauses in the bid proposal.
According to plaintiff, Holford was given documentation on the manufacturers of the gloves which Charles proposed to supply (relative to the requirement that the manufacturer had been in business for five years and that the gloves met FDA specifications). Between 30 and 50 cases of gloves were on the warehouse floor, earmarked for appellee. However, for reasons which are not clear, the name of the manufacturer was purposely blotted out on the documents given to Holford. When Holford left, Charles was confident that the contract would be forthcoming. *407 Instead, the letter of August 22 (referred to hereinabove) with the proposed disqualification and the reasons therefore was sent.
It is not clear why a hearing was not requested within seven days, but was requested one month later by plaintiff's attorney. Plaintiff was notified, via the letter of October 13, 1989 addressed to his attorney, that all bids in proposal No. 2786 had been rejected and that the hospital was going to re-bid the item. Meanwhile, according to Mr. Holdford, EJGH had already entered into an agreement to purchase the items with Southeast Louisiana Hospital Service Corporation (referred to generally as SupportHealth Louisiana).
Arthur Holdford, whose deposition was admitted as evidence in lieu of his testimony, testified that EJGH contracted with SupportHealth "in the latter part of 1989" and did not pursue a re-bid of the gloves. However, in the original bidding process, once S.P. had been adjudged as the lowest apparent bidder, Holdford decided to meet with Mr. Charles personally, as a new vendor, to see him, his facility, and the gloves he proposed to sell. Holdford stated that he saw no inventory and discovered that no hospitals the size of EJGH were serviced by Mr. Charles' company. He saw no evidence that S.P. could guarantee a 95% fill rate on a standing order as specified in the bid requirements. Holdford also stated that Charles had shown him a box of exam gloves which had no printing on them, and Holdford had no way of relating those gloves to the gloves referred to in the FDA documents. He stated that he saw no documentation showing that the glove manufacturer had been in business for five years. Holdford testified that Charles did not even hint that he was willing to change the 25 case order minimum. He did state, however, that all of his present vendors do not have the computer to compute entry system and that the computer issue was not "dispositive" of the ability to be a vendor. He was positive that every requirement with which he had problems concerning S.P. was mentioned in writing, either in the bid proposal or specification.
Sharon Vidaurreta, an employee in the purchasing department of EJGH, testified that all bidders received the complete bid packages that all bids on the gloves were rejected and rejection letters were sent to all bidders, telling each bidder why the individual bids were rejected.
According to Ms. Vidaurreta, the fact that S.P. was the lowest bidder did not ensure the contract award, since the product must be inspected and the specifications met. S.P. did not meet the specifications.
The trial court gave extensive oral reasons for judgment. In essence, the court found that EJGH did send one entire bid package with all specifications therein to appellant and that the bid of systems Plus deviated substantially from the bid requirements so as to merit disqualification. Specifically, the court found that appellant bidder had attached conditions to its proposal and that such conditions were prohibited by the instructions quoted hereinabove.
Additionally, the court found that the proposed increase in price for the second and third year based on the rate of inflation violated the specifications that the price was to be firm for three years:
... this Court feels that the logical reading of length of contract saying price to be firm for three years from date of award, means exactly what it says, a firm number. Although you may have computed three and one-half percent as the rate of inflation, that rate of inflation, pursuant to your own witness, is an average and is subject to variances. Accordingly the contract for East Jefferson, in this Court's opinion would not be a firm contract susceptible of ready interpretation.
Additionally, the court determined that a computer was a requirement:
It appears to me, that although you make nice argument that a FAX machine is available, it seems to me that in the best interest of the public fisc that the public has a right to documents which can be maintained on a ready access, specifically computerization. And the fact that they may not have had it to date does not, in this Court's opinion, minimize [sic] the significance of that particular requirement.

*408 For Systems Plus to say if they need it, they'd do it later, again will do exactly what Triad prevents or says is wrong and that would be to give that bidder an unfair advantage over responsive bidders. Same response with respect to their conditional bidding. So I am satisfied that under 3822:14 that East Jefferson Hospital had an absolutely perfect right to disqualify this bidder because they lacked a responsive bid and because their bid was not in conformity with the public bid law.
The court further found that plaintiff had received his right to request a hearing in accord with LSA-R.S. 38:2212(J), infra, and that its request came too late, one month after the notice was received. Because the bid was substantially unresponsive and plaintiff was given its rights to a hearing, the case was dismissed.

ANALYSIS
LSA-R.S. 38:2212(A)(1)(a) and (b) reads, in pertinent part, as follows:
A. (1)(a) All public work exceeding the contract limit as defined herein, including labor and materials, and all purchases of any materials or supplies exceeding the sum of ten thousand dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part. However, purchases of five thousand dollars or more, but less than ten thousand dollars shall be made by obtaining not less than three telephone or facsimile quotations. A written confirmation of the accepted offer shall be obtained and made a part of the purchase file. If quotations lower than the accepted quotation are received, the reasons for their rejection shall be recorded in the purchase file.
(b) The provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be considered as informalities and shall not be waived by any public entity.
At the time of the events herein, subsection (J) read as follows:
J. If the public entity letting the contract proposes to disqualify any bidder, such public entity shall:
(1) Give written notice of the proposed disqualification to such bidder and include in the written notice all reasons for the proposed disqualification; and
(2) Give such bidder, who is proposed to be disqualified the opportunity to be heard at an informal hearing at which such bidder is afforded the opportunity to refute the reasons for the disqualification.
LSA-R.S. 38:2214(A)(2) read thusly:
The public entity may reject any and all bids for just cause.
Our Supreme Court discussed determination of the "lowest responsible bidder" in LA. Associated Gen. Contr. v. Calcasieu, 586 So.2d 1354 (La.1991), wherein it stated:
The Public Bid Law requires all public construction contracts of major importance be let to the "lowest responsible bidder." The term "lowest responsible bidder" does not constrain the public authority to accept the lowest monetary bid. Haughton Elevator Div. v. State Division of Administration, 367 So.2d 1161 (La.1979). Rather, the Public Bid Law vests the public entity contracting the work with wide discretion to determine bidder responsibility. Id. In determining bidder responsibility, the public entity may look to financial ability, skill, integrity, business judgment, experience, reputation, quality of previous work on contracts, and other similar factors bearing on the bidder's ability to successfully perform the contract. Housing Authority of the City of Opelousas, Louisiana v. Pittman Construction Co., Inc., 264 F.2d 695, 698 (5th Cir.1959). See also Cooper & Horton, Competitive Bid Requirements For School District Contracts, 46 Tex.B.J. 1154, 1155 (1983) (The criteria for determining bidder responsibility includes such things as experience, skill, ability, business judgment, financial capacity, integrity, honesty, possession of necessary facilities or equipment, previous performance, reputation, promptness and any other factors *409 which could reasonably be asserted as being relevant to successful performance.).
By enacting the Public Bid Law, the legislature has developed a rather complex and unique procedure by which public entities are to award public works contracts. Central to this process is the legislature's desire that all prospective bidders be given an opportunity to bid on a given project. In choosing the term "lowest responsible bidder," the legislature sought to further the goals of the Public Bid Law (insuring competitive bidding and protecting the taxpaying citizen from increased costs resulting from fraud and favoritism) while at the same time expressly providing public entities with a mechanism to insure the skill and quality of the workers employed on the project.
By allowing public entities to award contracts to the "lowest responsible bidder" rather than the "lowest bidder," the legislature has created a system by which an entity may refuse to accept bids from bidders who are thought to be irresponsible or incapable of performing the work as desired. See LA. Associated Gen. Contr., supra.
In Thigpen Const. v. Parish of Jefferson, 560 So.2d 947 (La.App. 5 Cir.1990), we held that an unsigned bid was properly rejected, and in so doing, we stated:
... we find that the failure to sign the bid was a substantial failure to comply with the terms of the contract proposal and, therefore, the Parish properly rejected it. We agree with the reasoning of the First Circuit in Bilongo v. Dept. of Health & Human Resources, 428 So.2d 1021 (La. App. 1 Cir.1983), that bids which deviate from the specifications amount to no bids. A substantial variance between a bid specification and a bid requires rejection of the proposal. Tide Equipment Co. v. Pointe Coupee Par. Police Jury, 312 So.2d 154 (La.App. 1 Cir.1975); Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4 Cir.1972).
* * * * * *
The provisions of the public contracts laws must be strictly construed. Adams v. Magnolia Const. Co., Inc., 431 So.2d 38 (La.App. 1 Cir.1983). Accordingly, it has been held that where there is a substantial variance between a bid proposed and a bid accepted, there is no competitive bidding and a contract thus awarded is void.
In D.M. Clement Contr. v. St. Charles Parish, 524 So.2d 86 (La.App. 5 Cir.1988), we stated:
We hold that the Parish's reasonable, good faith interpretation of its own specifications should not be disturbed by a court whose views might be different. In making this holding, we follow in substance those many prior cases which have held that
Louisiana follows the general rule of vesting a public agency, in awarding a public works contract, with discretion subject to judicial review. Courts will not substitute their judgment for the good faith judgment of an administrative agency.

Budd Const. Co., Inc. v. City of Alexandria, 401 So.2d 1070, 1077 (La.App. 3rd Cir.1981), writ den. 404 So.2d 1262 (La. 1981). Accord: Audubon Store Inc. v. Schrimsher, 434 So.2d 1159 (La.App. 1st Cir.1983); Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La. App. 4th Cir.1972).
We agree with the findings of the trial court that the conditions placed on and attached to the appellant's bid, of a (1) 25 case per order minimum, and (2) the price increase for the second and third years based on the rate of national inflation, were substantial enough to render the bid unresponsive based on the bid specifications enumerated above. The court apparently believed the testimony of Mr. Holdford, who stated that these conditions had never been removed, and such credibility determinations are within the discretion of the trial court and should not be disturbed. Rosell v. Esco, 549 So.2d 840 (La.1989).
More importantly, in this regard, we agree with the reasoning of the First Circuit in Barber Bros. Contracting Co. v. DOTD, 529 So.2d 442 (La.App. 1 Cir.1988), that an agency's discretion to determine the lowest responsible bidder does not extend to post-bid *410 negotiations to correct defects in the original bid which should have resulted in the rejection of that bid.
Therefore, the fact that plaintiff conditioned his bid on a minimum order violated the bid instructions which read that such "will render the bid informal ..." and "Failure to comply will be cause for rejection of the proposal." Additionally, the inflation clause in the proposal violates paragraph seven, which mandates that prices be firm for three years from the date of the award. Under LSA-R.S. 38:2212(A)(2):
The bid specification may contemplate a fixed escalation or de-escalation in accordance with the United States Bureau of Labor Statistic's Consumer Price Index and/or Wholesale Price Index. Bids based on specifications which are subject to a recognized escalation index shall be legal and valid.
However, the specification here does not contemplate an escalation in accordance with any recognized index, nor does the bid, as written, do so. Consequently, that condition on the proposal of appellant was a substantial variance from the specification. EJGH was, therefore, not arbitrary in its rejection of appellant's bid.
Additionally, Mr. Holdford testified that his inspection of appellant's warehouse disclosed no inventory, although Mr. Charles claimed otherwise. Again, given the trial court's obvious and great discretion to make credibility determinations, such a fact would indicate appellant's inability to comply with requirement that the vendor stock inventory locally. The reasonable, good faith interpretation by EJGH of its own specifications should not be disturbed. D.M. Clement, supra.
Therefore, for all the above reasons, the trial court correctly determined the bid was not in substantial compliance. The bid amounted to "no bid," under Thigpen, supra, and rejection was therefore required.
Because we find that the condition specified above rendered the bid unresponsive, we need not make a determination relative to the computer requirement.
Finally, it is clear that plaintiff/appellant was given a reasonable time within which to request a hearing in accordance with the statute. He did not timely request a hearing from the disqualification proposal of August 22; nor was the request pursued from the bid rejection of October 13. We find nothing in the law which would require EJGH to do more than provide the opportunity for an informal hearing which they did. There was no violation of the due process rights of appellant under these circumstances. Additionally, we agree with the First Circuit in Triad Resources and Systems Holding Inc. v. Parish of LaFourche, 577 So.2d 86 (La.App. 1 Cir.1990) in which the court said:
The procedural due process requirements enumerated in Haughton are not applicable where the bid is substantially unresponsive to the specifications. Such bidder does not have the protected interest in being awarded the contract which the low responsive bidder in Haughton was determined to have. Williams v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 388 So.2d 438 (La.1980). Due process mandates, however, that the awarding authority, after careful consideration of the written bid, act in a manner that is not arbitrary. Id. at 441. Additionally, the rejected low bidder should be informed.... of the reason for the rejection. Milton J. Womack, Inc. v. Legislative Budgetary Control Council, 470 So.2d 460 (La.App. 1st Cir.1985).
* * * * * *
To allow a substantially unresponsive bidder the right to a hearing to either supplement or clarify the unresponsive bid would be in contravention of the purpose and spirit of the Public Bid Law and would result in that bidder receiving an unfair advantage over responsive bidders.
S.P., as a substantially unresponsive bidder, did not have a protected interest in being awarded the contract, and was not entitled to a hearing to clarify its bid. Appellant was informed of the reasons for the rejection of its bid; and as we have found hereinabove, appellee's action was not arbitrary. *411 Therefore, the trial judge was also correct in finding that EJGH complied with the statutory requirements for a hearing.
Because of our findings hereinabove, and because of the posture of the case, the issue of the final contract with SupportHealth is not before us.
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is assessed costs of this appeal.
AFFIRMED.
NOTES
[1] As we appreciate the testimony of Mr. Charles, his complaint is not so much that he did not have all the written bid specifications, but rather that additional requirements were made of him. He complained that there was no requirement that his warehouse be inspected, or that he have a certain amount of inventory on hand. He testified such were "extra conditions."