Dear Mr. Karns:
You have inquired whether the capital and surplus requirement for a life insurance company is $300,000.00 under LRS-R.S. 22:71 or $100,000.00 under LSA-R.S. 22:801 (B) with respect to the following fact situation:
A company is granted a Certificate of Authority as an industrial insurer in the 1940's. In 1976 the company converts from being an industrial insurer to an ordinary life insurer with greater insuring power. It is assumed, that the capital required by the laws, in effect on the date of its charter, is $100,000.00.
LSA-R.S. 22:71 concerns capital requirements and subpart A. of this statute states, "Domestic stock insurers who apply for a certificate of authority prior to September 1, 1989, may transact the following kinds of insurance in this state upon qualifying therefor and by having paid-in capital and minimum surplus represented by assets as follows. . ." This statute then lists the paid-in capital and minimum surplus requirements for each of the various kinds of insurance: life, health and accident, vehicle physical damage, etc. Paid-in capital and minimum surplus totals $300,000.00 on this listing for a life insurance company.
By contrast, LSA-R.S. 22:801 entitled "Conversion requirements" provides the following:
 A. After the effective date of this Section, no domestic life insurer may convert to a type of insurer having greater insuring power without meeting the full capital, surplus, and deposit requirements of the type insurer to which it desires to convert.
 B. Any life company with annual premium income of two hundred thousand dollars or greater, excluding credit life, that has been actively engaged in business continuously during the past twenty or more years may convert to a type of insurer having greater insuring power according to the law in effect of the date of its charter.
Initial guidance for statutory interpretation in this circumstance may be found from the Louisiana Supreme Court in New Orleans Rosenbush ClaimsService, Inc. v. City of New Orleans 653 So.2d 538, 546 (La. 1995) citingBunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir. 1984) which stated, "Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions."
Moreover, per the Civil Code, "Laws on the same subject matter must be interpreted in reference to each other." LSA-C.C. Art. 13. The court inCity of Opelousas v. Waterbury 674 So.2d 1128, 1133 (La.App. 3 Cir 1996) repeated Civil Code Art. 13 verbatim. Immediately following this, the court stated, "This article makes it the duty of courts to harmonize and reconcile statutes if possible . . . where two statutes deal with the same subject matter and cannot be harmonized, the one which specifically addresses the matter at issue must prevail." Furthermore, an examination of statutes relating to our given fact situation reveal that LSA-R.S. 22:71
concerns all kinds of insurance where "kinds[1]" are life, health and accident, vehicle physical damage, title etc. By contrast, LSA-R.S. 22:801
only concerns "Conversion requirements." The given fact situation involved a conversion and a life company. Using the above language, this latter statute would be the one that, "specifically addresses the matter at issue." Accordingly, it would appear the capital and surplus requirements of LSA-R.S. 22:801 (B.) would control.
Furthermore, where there is no clear indication of legislative intent to repeal, a specific statute will not be repealed by a general one, regardless of the priority of enactment. Green v. Louisiana UnderwritersInsurance Company 571 So.2d 610, 616 (La. 1990). The Court in Green
citing Smith v. Trosclair, 321 So.2d 514 (La. 1975) further stated repeal by implication is not favored and is justified only when two statutes are irreconcilable. In this instance we have seen no legislative intent to repeal. In fact, LSA-R.S. 22:801 (B) is the most recent legislative enactment (Acts 1975, No. 575 as compared to Acts 1966, No. 234) between the two statutes.
A specific application of LSA-R.S. 22:801 (B.) to the given fact situation will now be made for clarity. Subpart B. refers to "Any life company . . . that has been actively engaged in business continuously during the past twenty or more years may convert to a type of insurer having greater insuring power according to the law in effect on the date of its charter." We are given that the company in question was an industrial insurance company actively engaged in business since the 1940's that converted to an ordinary life company in 1976. The definition of a "Life Insurer" under LSA-R.S. 22:5 (9) shall mean, "all insurers issuing life insurance contracts, including industrial and serviceinsurers. (Underlining added.) Accordingly, an industrial insurance company is a life insurer and would come under the purview of this statute. Moreover, this company converted to a type of insurer "having greater insuring power" when it converted from industrial insurance to ordinary life. Industrial insurance is limited by definition under LSA-R.S. 22:252 (A)(1) to an aggregate value of $1,250.00 in death benefits.[2]
Since making your initial request you have verbally inquired, "Whether the change from a industrial insurer to a ordinary insurer is truly a "conversion" as contemplated by the insurance code?" First of all, there is clearly a difference contemplated in the insurance code between industrial insurers and ordinary insurers as evidenced by a code section that concerns standard nonforfeiture law for life insurance, LSA-R.S.22:168. Subparagraphs (A)(1)(b) and (d) of this section distinguish industrial and ordinary insurers by referring to different premium payment periods for the two types of insurers. Furthermore, as we previously stated, LSA-R.S. 22:5 (9) defines "life insurers" to include industrial insurers. In short, industrial and ordinary are two types of life insurance. Further insight to answer your question can be gained by reading the following code sections as they interrelate to each other: LSA-R.S. 22:84, LSA-R.S. 22:258 and LSA-R.S. 22:801.
LSA-R.S. 22:84 "Existing insurers: capital requirements and powers" is an insurance code section that provides for any domestic stock insurer incorporated prior to 12:00 noon of October 1, 1948 to continue its capital requirement in the amount named in its articles of incorporation. In the event any such insurer desires to enlarge its insuring powers to incorporate additional kinds of insurance not included in its articles of incorporation as of 12:00 noon of October 1, 1948 then the capital of such insurer must be increased to meet the full requirements of the insurance code. However, LSA-R.S. 22:84 (C) makes it specific that this Section shall not apply to industrial insurers within the terms of LSA-R.S. 22:258. This latter Section (22:258) "Powers of existing industrial insurers" is specific as to industrial insurers and revolves around the same specified time, 12:00 noon of October 1, 1948. Specifically, Section 258 concerns industrial insurers already organized and qualified under the industrial laws of this state as of twelve o'clock noon of October 1, 1948.
LSA-R.S. 22:258 is one long paragraph comprised of a mere three sentences and by all measures very difficult to read.[3] However, in essence it provides that an industrial insurer, that only wants to write policies capped at $1,250.00, can continue to do so without the need to increase its capital or deposit requirements. If an industrial insurer wants to increase its policy writing cap from $1,250.00 to $2,500.00 then it needs to either convert to an ordinary insurer, or if it does not convert it must increase its capital[4], surplus and deposit requirements to that of an ordinary insurer and make an appropriate amendment to its charter[5]. This section (22:258) really only impacts 22:84 in that, from the legislative viewpoint, industrial insurers are to be treated differently in terms of capital requirements. However, more significantly to answer your recent inquiry on conversion, R.S. 22:258 does use language that the change from industrial insurer to ordinary insurer is a "conversion". The beginning of the third sentence states, "No industrial insurer . . . . can acquire such authority except by conversion to another type insurer. . . . without conversion to an ordinary insurer. . . ."
The conclusion that a change from industrial to ordinary insurer is a "conversion" further helps us to interpret R.S. 22:801 (B). This section provides that any life company (an industrial insurer is a life company)may convert to a type of insurer having greater insuring power according to the laws in effect on the date of its charter. When an industrial insurer converts to a ordinary insurer it obtains "greater insuring power" as it is no longer subject to the $1,250.00 or $2,500.00 caps under LSA-R.S. 22:252 and LSA-R.S. 22:258. Accordingly, this is further support for legislative intent for R.S. 22:801 (B) to apply to the given fact situation.
Furthermore, "conversion" is also addressed in one other insurance code section, LSA-R.S. 22:806. This Section states, "No domestic insurer may convert from a stock to a mutual, or from a mutual to a stock insurer, or from any type insurer to any other type insurer, except as provided in R.S. 22:801 unless a plan of conversion is submitted to and approved by the commissioner of insurance." This statute clearly contemplates that "conversion" is not restricted to insurers converting from stock to mutual or vice versa but also from any type insurer to an other type insurer. Unfortunately, "type insurer" is not a defined term in the insurance code, but is used very broadly.
In conclusion, it would appear that the capital and surplus requirements of LSA-R.S. 22:801 (B) would control.
We hope you find this responsive to your questions.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ________________________________ J. Bradley Overton Assistant Attorney General
[1] Kinds of insurance are further defined by LSA-R.S. 22:6.
[2] LSA-R.S. 22:252 (B)(1) and LSA-R.S. 22:258 provide for industrial insurance on a single life in an amount not to exceed $2,500.00 if minimum capital, surplus and deposit requirements are met along with other conditions.
[3] LSA-R.S. 22:258 Powers of existing industrial insurers: Industrial insurers already organized and qualified under the industrial laws of this state as of twelve o'clock noon of October 1, 1948, shall continue to have the same underwriting powers they had as of that date without the necessity of meeting the increased capital or deposit requirements of this code. All policies issued subsequent to twelve o'clock noon of October 1, 1948, by such insurers must conform to the provisions of this code, except as to the amount of insurance which may be written on a single life. No industrial insurer, not authorized to write policies in excess of one thousand two hundred fifty dollars as of twelve o'clock noon of October 1, 1948, can acquire such authority except by conversion to another type insurer, provided, however, that when any domestic industrial insurer, not so previously authorized, shall meet the minimum capital, surplus and deposit requirements, if a stock company, or the minimum initial surplus and deposit requirements, if a mutual company, required by this code of an ordinary insurer, it may, after appropriate charter amendment and without conversion to an ordinary insurer, or after conversion, issue industrial insurance on a single life in an amount not to exceed two thousand five hundred dollars exclusive of multiple indemnity, subject to all other provisions of this part applicable to industrial insurers except as to amount.
[4] LSA-R.S. 22:258 only sets out a minimum capital requirement for a stock company and not a mutual company.
[5] Further verification for this interpretation is that it appears to be consistent with the policy limit restriction set out in LSA-R.S. 22:252
(A) and (B). Moreover, LSA-R.S. 22:252 (C) provides the limits shall be increased to the underwriting limits provides in R.S. 22:258 for those insurers who are entitled to increased underwriting powers under its provisions.
OPINION NUMBER 96-428
October 23, 1996
4 Assessors
The assessor must assess property in the name of the record owner and the owner need the record owner of possession from the vendor heirs.
Mr. Gary A. Dimas, CLDA Cameron Chief Deputy Assessor P.O. Box Drawer U Cameron. LA 70631